[Filed November 9, 1886.]

## AMOS N. KING v. FREDERIKA VOOS ET AL.

HUSBAND AND WIFE—SEPARATE PROPERTY OF MARRIED WOMAN.—When a wife, honestly conducting a business in her own name, and for her own benefit, in good faith employs her husband in the management thereof without compensation, such employment is not *per se* a fraud upon the creditors of the husband, and does not have the effect to subject to their claims her interest in the business or the profits thence arising.

SAME—FRAUD—EMPLOYMENT OF HUSBAND.—Such an arrangement, however, on account of the opportunity afforded by the marriage relation to conduct a scheme to defraud creditors, ought to be vigilantly scrutinized whenever fraud is charged. Any device designed to cover the property or acquisitions of the husband debtor, or conduct his business in the name of the wife to defraud creditors, the law will not tolerate.

SAME.—If a husband choose to give his wife his services in the conduct of her separate business, the creditor, having no power over his volition, or to compel him to work for his benefit, is not defrauded.

MULTNOMAH COUNTY. Plaintiff appeals. Affirmed.

*J. C. Moreland*, for Appellant.

Transactions between husband and wife to the prejudice of creditors are to be closely scanned, and their *bona fides* must be clearly established. (Wait on Fraudulent Conveyances, § 300.) Purchases by the wife of an insolvent husband must be clearly shown to have been with her own money. (Wait on Fraudulent Conveyances, § 308; *Simms* v. *Morse*, 2 Fed. Rep. 325.) Land purchased by a married woman on credit will not be protected from husband's creditors. (*Baringer* v. *Stiver*, 49 Pa. St. 129.) A wife cannot carry on business on credit with her

husband acting as agent, and appropriate the proceeds to herself as against the husband's creditors. (*Glover* v. *Alcott*, 11 Mich. 471 ; Tyler on Inf. and Cov., 766.) Husband cannot give the wife the proceeds of his labor, if indebted at the time. (*Commonwealth* v. *Fletcher*, 6 Bush. 151–171 ; *Klous* v. *Kilbourn*, 20 N. J. Eq. 24 ; *Keeney* v. *Good*, 21 Pa. St. 349.) Property bought on joint note and mortgage of husband and wife, is subject to debts of the husband. (*Seitz* v. *Mitchell*, 94 U. S. 580 ; *Baringer* v. *Stiver*, 49 Pa. St. 129 ; *Glidden et al.* v. *Taylor et al.*, 16 Ohio St. 509.) When the skill and labor of the husband are mixed with those of the wife by her consent, the business will be considered his. (*Oxnard* v. *Swanton*, 39 Me. 125; Bump on Fr. Con. 246 ; *Klous* v. *Kilbourn*, 20 N. J. Eq. 13.) Improvements made by the husband on lands of wife will be taken for debts of the husband. (Wait on Fraudulent Conveyances, Sec. 26 ; see also *Union Trust Co.* v. *Fisher*, 25 Fed. Rep. 178.)

*T. N. Strong* and *E. B. Williams*, for Respondents.

The question is, Can a wife engaged in business, employ her husband to help her in conducting it, without making the proceeds liable for his debts? The laws of our state upon this question, and decisions under them, are as follows: (Sec. 5, Art. 15, Constitution, Code 95; Act of June 4th, 1859, Code 1864, 786; Act of Oct. 26, 1866, Code 663 ; Act of Oct. 15, 1872, Code 663 ; Act of Oct. 21, 1878, Sess. Laws, 92–94 ; Act of Oct. 21, 1880, Sess. Laws, 6, 7.) Under the Act of June 4, 1859, it was held in *Brummet* v. *Weaver*, 2 Or. 171, that a married woman " could not only hold separate property without the intervention of a trustee, but also exchange one species of her separate property for another." (And see *Starr* v. *Hamilton*, Deady, 274.) At any rate, this question is set at rest by the two subsequent acts, viz., 1878 and 1880. (*Tilden* v. *Barrel*, 8 Saw. 412.) The acts removing the disabilities of married women are remedial, and should be liberally construed. (*Dayton* v. *Walsh*, 47 Wis. 113.) It has been emphatically held in the following cases that such agency was authorized, and

that, too, with or without compensation, as may be agreed. This is the controlling and only question in this case. (*Buckley* v. *Wells*, 33 N. Y. 518; *Abbey* v. *Deyo*, 44 N. Y. 343; *Hossfeldt* v. *Dill*, 28 Minn. 469; *Dayton* v. *Walsh*, 47 Wis. 117; *Cubberly* v. *Scott*, 98 Ill. 38; *Bennett* v. *Stout*, 98 Ill. 47; *Lewis* v. *Johns*, 24 Cal. 98; *Parker* v. *Bates*, 29 Kan. 598; *Cooper* v. *Ham*, 49 Ind. 393– 400; *Miller* v. *Peck*, 18 W. Va. 75; *Coon* v. *Rigden*, 4 Colo. 275; *Martinez* v. *Ward*, 19 Fla. 175; *Wells* v. *Smith*, 54 Ga. 262; *Rankin* v. *West*, 25 Mich. 200; *Ploss* v. *Thomas*, 6 Mo. App. 157; *Kutcher* v. *Williams*, 3 Atlantic Rep. 257, N. J.; 2 Bishop, Married Women, Secs. 452, 465.) If he saw fit to work for nothing but his bare living, his creditors cannot complain, as they have no claim upon his personal efforts. His talents are his, to do what he pleases with. It is only what he acquires as *his own* that may be taken by his creditors. (*Rush* v. *Vought*, 55 Pa. St. 437; *Webster* v. *Hildreth*, 33 Vt. 457.) A husband's first duty is to his family, even as against his creditors. (*Cooper* v. *Ham*, 49 Ind. 416; 2 Bishop, Married Women, Sec. 301; *Abbey* v. *Deyo, supra*.)

LORD, C. J.—This suit is a creditor's bill seeking to subject certain real property described in the complaint, owned by the defendant Frederika Voos, to the payment of certain judgments recovered against Q. Voos, her husband. The defendant Frederika claims that the property referred to was bought with her own money, earned and accumulated from her restaurant business; that it was owned, conducted, and carried on by her in her own name, and for her own benefit; that she contracted all bills in her own name, and was individually responsible for all debts, and that her husband only assisted her with his services in the management of the business. The judgments which it is sought to satisfy out of this property were recovered against the defendant Q. Voos several years prior to Frederika's engagement in the restaurant business.

The evidence shows that in the spring of 1875, the defendant Q. Voos went to California, where, shortly after, his wife

joined him, and from that time until the fall of 1876, when he returned to Portland, he had engaged in various kinds of business at different places in that state, all of which proved to be failures in a business point of view. Returning again to Portland, although without means, with the assistance of friends, during the next three years he made several other business adventures, all of which were attended with a like result.

At this juncture in their affairs, when the husband was without money, or credit, or business, the wife recognized that something must be done, and presently, to provide a support for their family, which consisted of eight children, besides the defendants, an opportunity offering, in the fall of 1879 she leased the restaurant and dining-rooms of the Occidental Hotel, and began, in her own behalf, and on her own individual responsibility, the restaurant business. The arrangement entered into at that time was regarded as a desirable one, and which required no particular outlay of money ; and all the facts and circumstances show that this transaction, from its inception, and all other matters subsequently connected with it, was *bona fide ;* that she was the party trusted, and responsible for all the obligations it imposed, and all other engagements incidental to the management and prosecution of the business.

Without entering into detail, it is sufficient to say that during the intervening years she is the responsible head of the business, contracting and paying all its obligations of whatever kind, and managing and directing its affairs with such prudence, economy and foresight as avoided disaster and secured financial success. The profits of the business, when accruing, she prudently husbanded, and as the result has since proven, invested them wisely and successfully. The property in question, which is now sought to be subjected to the payment of the judgments against the husband, was bought by her direction, and for her, with her money thus acquired, and the deed was executed to her and in her name, and is so recorded. As to these general facts there can be no dispute, although it was

intimated that the arrangement to carry on the business was fictitious, and designed as a cover of fraud.

The main contention, however, arises out of the circumstance that her husband, whose services were valuable, assisted her in conducting the business without compensation ; and that it would be a fraud in law to allow her to retain the benefit of them, at least in excess of what is required to support the family.

Let it be understood that the evidence satisfies us that the business was her own, and honestly carried on by her, separately from her husband. In such case, it is clear that the relation of employee and employer, and principal and agent, may exist between the husband and wife, without subjecting her interest in the business, or the acquisitions arising out of it, to the debts of her husband. The mere fact that the defendant employs her husband, does not make the business in which she embarks or carries on *his* business; nor is it perceived why, if she needs an agent or servant to assist her in the conduct of her business, she may not employ her husband as well as a stranger. These relations may exist in the law, and are not inconsistent with good faith and fair dealing.

But can the husband give his services to the wife, in her separate business, without committing a fraud upon his creditors, or rendering her interest in the business liable ? It is said by Mr. Bump, that " an arrangement by which the husband acts as his wife's agent without any compensation, or for a compensation that is insufficient, is, in effect, an attempt to make a voluntary conveyance of the products of his skill and labor in her favor, and is void as against creditors." (Bump. Fraud Con. 270.) But this proposition, as thus stated, is thought not to be accurate, nor sustained by the decisions cited in the note. (See opinion of Buskirk, J., in *Cooper* v. *Ham*, 49 Ind. 393, and also *Miller* v. *Peck*, 18 W. Va. 81.)

It is freely admitted, on account of the opportunity that the marriage relation affords the husband and wife to conduct a scheme to defraud creditors, that the transaction ought to be vigilantly scrutinized, particularly when fraud is charged.

Any device designed to cover the property or acquisitions of the husband debtor, or to conduct his business in the name of the wife, or some member of the family, to defraud creditors, is a sham and a fraud, which, when discovered, the law will not tolerate, but brand with the mark of its condemnation. But the mere fact that the husband gives his services to the wife in the conduct of her separate business, is not of itself sufficient to vitiate it with fraud, or to make her interest in the business, or the profits arising out of it, chargeable with his debts. In *Abbey* v. *Deyo*, 44 N. Y. 343, it was held that a husband may work for his wife in the management of her separate business or property, without any compensation, and that his creditors will not thereby acquire any rights against the wife or her property. Hunt, J. said:

" In arguing this point, the appellant's counsel insists that the services, the time and talents of the husband are valuable, and he has no more right to give them to his wife, as against his creditors, than to give to her his property to their prejudice. The one, he says, is as much their property as the other. The argument is entirely unsound. The property of a debtor, by the laws of all commercial countries, belongs to his creditors. He must be just before he is generous; he must pay before he gives. Not so with his talents and his industry. Whether he has much or little, or nothing, his first duty is to support his family. The instinctive impulse of every just man holds this to be the first purpose of his industry. The application of the debtor's property is rightly directed to the payment of his debts. He cannot transport it to another country, transfer it to his friend, or conceal it from his creditor. Any or all these things he may do with his industry. He is at liberty to transfer his person to a foreign land ; he may bury his talent in the earth, or he may give it to his wife or friend. No law, ancient or modern, of which I am aware, has ever held to the contrary. No country, unless both barbarous and heathen, has ever authorized the sale of the person of the debtor for the satisfaction of his debts.

And Earl, J., said: " The creditors of an insolvent have no

claim upon his services. They cannot compel him to work and earn wages for their benefit ; and hence he does not defraud them, if he chooses to give away his services by working gratuitously for another. The husband may, therefore, in the management of his wife's separate business or property, work for her, as any person might, without any compensation, and his creditors would not thereby gain any rights against the wife or her property, and would have no legal right to complain. (See, also, 2 Bish. on the Laws of Mar. Women, Secs. 450–466.) The law gives the creditor no power over the volition of his debtor, so that he may direct or control his future labors, or his contracts relating to the future. Whether the debtor shall exercise his volition by laboring in his own behalf, or for another, is a matter of his own free choice, which the creditor cannot coerce, control or prevent. If he choose to work for himself, the acquisitions of the labor belong to him and the creditor, and the creditor may lay hold and apply them to the payment of his debt.

On the other hand, if he choose to give his services to his wife, in the management of her separate property or business, the fruit of such labor is not his but another's, and on principal the creditor cannot seize and appropriate it to the payment of his debt. So that if a husband choose to give his wife his services in the conduct of her separate business, the creditor, having no power over his volition, or to compel him to work for his benefit, is not defrauded. Nor is the fact of such service any ground for subjecting her interest in such business, or the profits arising out of it, to the payment of her husband's debts.

There does not appear by the record to have been any contract of employment between the husband and wife. He seems to have rendered his services gratuitously, although they were valuable; and from the part he took, was, as to the other employees, so to speak, "foreman of the gang." The responsibility of providing for the family the wife undertook out of her separate business, and if she derived any assistance from him, it arose out of the circumstances detailed. Under

Points decided.

the act of 1880, the wife was released of all " civil disabilities " not imposed upon the husband, except the right to vote (Sess. Laws, 1880, p. 6), and her property is equally liable for the expenses of the family (Sess. Laws, 1878, p.92). Her right to acquire property, to enjoy the fruits of her labor, or to hold and invest the profits arising from the successful management of her own trade or business, can no longer be disputed. And when by her industry, prudence, economy and business foresight, she acquires property in the management of her separate business, it is her property, and not his, and cannot be liable for his debts. The case was very thoroughly examined by the learned referee, and subsequently confirmed, after full argument and thoughtful consideration by the court, and the result reached is in accordance with our views. The decree must be affirmed.