### DWIGHT R. CHAPMAN ET AL. V. GEORGE I. SEELY.

1. IN THE ABSENCE OF COMPLETE RECORD PLEADINGS, DOCKET AND ENTRIES MAY BE USED.

   A record of an action should contain, and is, a history of the cause, from its beginning to its end; and where a complete record has not been made, when it is desired to be used as evidence in another action, the pleadings, and docket and journal entries, may be used instead of such record.

2. DOCKET ENTRY MAY BE USED AS EVIDENCE IN AN ACTION ON THE BOND.

   Where an order of the court, by consent of parties, was entered on the journal, directing the defendant to execute an undertaking (which was lost) to discharge an order of attachment issued therein, and as a substitute therefor, with sureties, to the approval of the clerk, and the clerk subsequently entered upon the appearance docket: "Bond to be substituted for attachment filed January 9, 1875, A. L. Moffatt, A. B. Reid, George S. Case, surety," such entry is a part of the record, and may be given in evidence, in an action on the lost undertaking, when issue is taken upon the averments of the petition as to such action and attachment proceedings, and the giving of such undertaking, when it appears that a complete record was not made in such action.

3. WHERE MATERIAL PART OF ENTRY IS COMPETENT, OBJECTION TO WHOLE SHOULD BE OVERRULED.

   In such case, if it is conceded that a material part of such entry is competent, a general objection to the whole entry should be overruled.

4. COURT MAY CHARGE THAT SUCH EVIDENCE BE GIVEN SUCH WEIGHT AS IT FAIRLY DESERVES.

   In such action, it is not error, to the prejudice of the defendant, for the court to say to the jury: "This entry, however, is to be given such weight only as in your judgment in connection with the other evidence in the case it fairly deserves."

ERROR to the Court of Common Pleas of Trumbull county.

LAUBIE, J.

Seely brought suit in the court of common pleas against Dwight R. Chapman, A. L. Moffatt, A. B. Reid and Geo. S. Case, to recover upon a lost undertaking executed and given to discharge an attachment in a case wherein Seely sued Chapman and obtained judgment against him, which was unpaid and unsatisfied. Seely obtained judgment on the lost undertaking against Chapman

and the other defendants, as his sureties on the undertaking, to reverse, which this proceeding in error is prosecuted.

In his petition, Seely alleged that he had prosecuted an action in the court of common pleas of the county against Chapman; that he had obtained an order of attachment therein, under which a debtor of Chapman (who was named) had been garnisheed, who was largely indebted to Chapman; that thereafter, under an order of court to that effect and by consent of the parties, in order to discharge the attachment and to relieve such debtor from the garnishment, the defendant, Chapman, was ordered to enter into an undertaking to the plaintiff as a substitute for the attachment, in the sum of five thousand dollars, with sureties, conditioned according to law, to the approval of the clerk of the court, and when so done the attachment was to be discharged. That Chapman and the other defendants, as his sureties, in pursuance of that order executed and delivered to the clerk the undertaking in question, conditioned according to law, as a substitute for such attachment which was accepted and approved by the clerk, and the attachment discharged; that the garnishee had paid the debt to Chapman; that judgment had subsequently been recovered in the case by *Seely* v. *Chapman* for seven thousand dollars, and execution returned unsatisfied, and defendants were liable to him to the amount of the undertaking, which was lost, etc. The defendants answered, denying generally all the allegations of the petition.

Every fact averred being put in issue, during the course of the trial below, the plaintiff introduced evidence, amongst other things (no complete record having been made of the attachment case), a journal entry of an order of the court for the discharge of the attachment, by the defendant executing an undertaking as a substitute for the attachment, in terms as alleged in the petition, and thereupon offered in evidence an entry upon the appearance docket made by the clerk, in the words and figures following: "Bond to be substituted for attachment filed January 9, 1875, A. L. Moffatt, A. B. Reid, George S. Case, surety," and to the admission of which objection was made and exception taken by the defendants, on the ground that such entry was no part of the record of the case of *Seely* v. *Chapman*.

It is claimed here that the court below erred in admitting this entry, because the statute prescribed what the record should be made up from, and that it did not require the clerk to make an entry upon the appearance docket in regard thereto. The sections of the statute (Civil Code, S. & C., 1129) in force at the time of the disposition of the attachment case, were:

"The clerk of each county shall exercise the powers, and perform the duties conferred and imposed upon him by other provisions of this code, by other statutes, and by the common law. In the performance of his duties he shall be under the direction of his court."

Section 588, which provided that the clerk "shall keep the records, and books and papers pertaining to the court, and record its proceedings."

Section 390, which provided that "records shall be made up from the petition, process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court."

Section 306, which provided that "the clerk of the court of common pleas shall keep at least five books, to be called the appearance docket, trial docket, journal record and execution docket," etc.

Section 305, which provided that on the appearance docket the clerk "shall enter all actions in the order brought, and date of summons or other process or order, the time of the return thereon and the return of the officer, the time of the filing of the petition, and all subsequent pleadings."

In addition, sec. 213 provided that undertakings for the discharge of attachments "may, in vacation, be executed * * * after the return of the order, before the clerk, with the same effect as if executed in court"—the sureties to be approved by him.

From these provisions, it appears that the clerk had certain duties to perform, particularly specified and defined, and further general duties which were neither specified not defined, to-wit: To make a record of all the material acts and pro-

ceedings of the court, and to perform and exercise all the duties enjoined upon a clerk of a court of record at common law.

This is a broad field for consideration, and viewed as a whole, it shows that a record should contain a history of a cause from its beginning to its end. In the language of the court in *Noble* v. *Shearer*, 6 O., 428: "Let us consider what a record is, and in what manner it is made up, and of what it consists, and there can be but little difficulty in reaching a conclusion to us, at least, satisfactory. A record is the history of the cause from its commencement, the issuing of the writ, until final judgment is rendered."

It must be conceded that the statute did not, in terms require the clerk to make an entry upon the appearance docket like the one under consideration; and it can, therefore, be justified and sustained only upon the assumption that it was a necessary part of his general duties and of the history of the cause.

Under the issues in the case, the plaintiff was required to prove all the material allegations of the petition to entitle him to recover, and it was necessary to prove them by the record; and he had the right, therefore, to introduce as he did as a part of that record, the order of the court for the execution before the clerk, as a substitute for the attachment, by the consent of the parties, of the undertaking in question. When that was done, why is it that what the clerk did, in pursuance of that order, is not a part of the record and a necessary part when entered by him on any book of the court by him to be kept? If not a record of a material act or proceeding of the court, certainly it was a part of the history of the cause, necessary to show that the order had been complied with, the attachment discharged and the garnishee released.

The clerk was acting in place of the court, and under its special direction and order of record, and some minute or return of his action under the order was required to be made by him somewhere, in the books or papers of the court.

In *Noble* v. *Shearer*, *supra*, the same objection was made in regard to an endorsement of surety for costs upon the original writ. The statute then in force provided that in case of non-residence, the writ should not issue from the office of the clerk until it had been indorsed for costs by a resident freeholder of the county, to be approved by the clerk. The writ had been issued, however, without such indorsement, and two years thereafter, by the voluntary act of the parties, surety did indorse the writ as security for the costs, and upon that undertaking *scire facias* was brought for the purpose of recovering the costs, and which could be maintained only because such indorsement was a part of the record in the cause, as *scire facias* is based solely upon matter of record. The court held that this indorsement, not having been made in accordance with the statute, was no part of the record, and *scire facias* would not lie; that if it had been indorsed upon the writ before it was issued, it would then have been a part of the record, which the party might proceed upon by *scire facias*. But further, the court say, pp. 428, 429: "It is not averred that Tice, the plaintiff in the suit, after commencing his action, had left the state, and that the court in the exercise of a power which we do not feel inclined to doubt they possess, had ruled him to give security; if such were the fact, it would change materially the aspect of this case."

In *Newsom's Adm'r* v. *Rau*, 18 O., 240, it was held: "A writ may be indorsed for costs by order of court, after service and return, and if such order appear of record, *scire facias* will lie against the surety."

Although not authorized to be done by any express statutory provision, yet being done in pursuance of an order of record of the court, it became a portion of the record, because a part of the history of the cause.

In regard to a sheriff's return, it is said: "When made and filed, the return becomes a part of the record. * * * If we keep this fact in view, we shall usually be able to determine without difficulty, whether a return can properly be admitted in evidence, and the effect to be given to it when it is admitted. Whenever the record in a case is competent evidence, the return, because it is a part

of that record, is also, as a general rule, competent evidence." Free. on Ex., sec. 363; *Root* v. *R. R. Co.*, 45 O. S., 230-31.

This, it will be seen, is the rule independent of statutory provision, as to recording the return, and upon principle I am unable to see any material distinction between the return of a sheriff upon an execution or order of attachment, and the docket entry or the return of a clerk as to an order to receive and approve a bond for the discharge of an attachment, so long as it embraces such facts only as it was his duty to do under such order. No writ having issued to the clerk, but the order being entered on the record, his entry or return might properly be entered on the record, in any appropriate book or place. Except appropriateness, there is nothing to guide his action as to this.

In support of the contention of counsel for plaintiffs in error, that a record is to be made up from, and to consist of, such things only as are specially mentioned in the statute, they cite *Armstrong* v. *State*, 21 O. S., 357, where it was held: "That a transcript from a docket of a justice of the peace is not competent evidence on the trial of a cause, to prove facts stated therein not required by the statute to be entered on the docket."

In that case the constable's return, showing the date of the return of the writ, had been entered by the justice on his docket, and the transcript was offered in evidence on the trial in the common pleas court to prove the date of the arrest of the defendant, and Judge Day, in the opinion, p. 360, in reviewing the matter, said: "The statute only required the justice to enter on his docket the date of the return of the writ (Code of Criminal Pro., sec. 42, and S. & C., 804, sec. 203) and makes his transcript evidence only of the entries required to be made on the docket. S. & C., 805, sec. 204;" and it was accordingly held that as the date of the arrest was not required to be entered on the docket, the transcript was not competent evidence of that date.

If this case is to be considered as an authority to the effect that nothing is a part of a justice's record that the statute does not in express terms require to be entered on his docket, then in a civil case, on default of an appearance on the part of the defendant, if the justice follows the statute, which is the same as in the criminal procedure cited in the Armstrong case (sec. 574, Rev. Stat.) and enters on his docket only the date of the return of the summons, his record would not show in terms jurisdiction of the person of the defendant; while if he copied the return of the constable, showing that he had, on a certain day, served the defendant personally with a copy thereof, it would have to be disregarded, as an entry not required to be entered on the docket by the statute. In error, nothing is regarded but that which is a proper and legal part of the record. *Goldsmith* v. *State*, 30 O. S., 208; *Ralston* v. *Adm'r, Ib.*, 92; *Waggoner* v. *State*, *Ib.*, 575; *Schultz* v. *State*, 32 O. S., 276. But it has been held without noticing the Armstrong case, that the jurisdiction of a justice of the peace in this state is inferior and limited; and to support a judgment of his court, the record must show that it had obtained jurisdiction over the person of the defendant,"and if it does not, the judgment against such defendant is void. *Robbins* v. *Clemmons*, 41 O. S., 285; *McCurdy* v. *Baughman*, 43 O. S., 78.

These cases, if the Armstrong case is to be thus construed, would seem to leave a justice of the peace utterly powerless, in the case put of a default, to render a valid judgment, as his judgment would be void, whichever course he pursued.

Perhaps, after all, a record of a justice's court, to be complete, should contain a history of the cause, and therefore should affirmatively show, if it is an "inferior" court, that it had obtained jurisdiction over the person of the defendant; and that a return of a constable on the writ is as fully a part of the record as is that of a sheriff in the court of common pleas.

Perhaps, rightly construed, *Armstrong* v. *State*, *supra*, decides only that a transcript of a justice of the peace can be used as independent evidence, in cases in another court, to prove such facts only as the statute expressly directs he shall

enter on the docket, and as declaratory of the effect of sec. 204, Civil Code, (sec 594, Rev. Stat.,) which provided that a transcript of such entries as was expressly directed to be made on the docket by sec. 203, code, (sec. 593, Rev. Stat.) should be competent evidence to prove facts stated therein; and should not be regarded as deciding that a justice's record cannot properly contain any matter not expressly directed by statute to be entered on the docket. Thus construed, the Armstrong case would have no bearing upon the question here made, or upon the jurisdictional question considered in *Robbins* v. *Clemmons, supra*. Indeed, it has been held that sec. 203, Civil Code (of which sec. 594, Rev. Stat., is a transcript) was directory merely. *Job* v. *Harlan*, 13 O. S., 489; *Carper* v. *Richards, Ib.*, 219, 224-25.

In *Robbins* v. *Clemmons, supra*, while it was held that the transcript must show affirmatively that the justice's court had acquired jurisdiction over the person of the defendant, the court looked at and treated the return of the constable, which was copied into the justice's docket, as a part of the record, without question.

I must confess, that if it were not for the decisions cited above, I should have grave doubts about a justice's court being one of inferior jurisdiction within the meaning of the rule that jurisdiction over the person cannot be presumed. It is a tribunal created by the constitution, and receives its jurisdiction from the same source, and in the same way as the court of common pleas receives its jurisdiction; that jurisdiction is according to the course of the common law, and is exclusive in civil causes to the amount of $100.00, and concurrent with the common pleas to the amount of $300.00. True, the justice is his own clerk, and his court has no seal, but, within our own territory at least, his certificate is all sufficient.

As a matter of curiosity, it may be noticed that in *Carper* v. *Richards, supra*, the jurisdiction in the justice's court in attachment proceedings (the defendant being a non-resident, and not personally served) was presumed.

In the case of *State* v. *Daily*, 14 O., 91, the question was presented whether a recognizance, taken before a justice of the peace in a criminal proceeding, was a part of the record of his court, before its return to the court of common pleas, and the court held that it was, although such recognizances were not required by statute to be entered on the docket of a justice of the peace, and were required to be delivered to the clerk of the court of common pleas.

Wood, C. J., in delivering the opinion of the court in the case, says, p. 98:

"It appears to us that the history of a proceeding before a justice of the peace, in cases clearly within his jurisdiction, and when acting in his judicial capacity, is a record. W. Sup. C. Rep., 38, 428. Not for the reason that the justice had the power of fine and imprisonment, is allowed a clerk, or uses a seal to verify the transcripts of his decisions; but because copies of his docket, unpretending, simple and informal as they are, are evidence of so high a nature that they import absolute verity: and unless lost or destroyed, cannot be proved *per notiora*, nor can they be contradicted at all. In this respect they are of equal validity with the court rolls of parliament, or the exemplifications of the highest judicial tribunals of our own country. The idea is not to be tolerated for a moment, that domestic court records are *prima facie* evidence only of the facts they contain."

This case was cited with approbation in *State* v. *Williams*, 14 O. S., 142, by Judge Ranney, in the following language:

"The case of *Ohio* v. *Daily*, 14 O., 98, * * * decides nothing material to the inquiry, except that a recognizance taken by a justice, in a case clearly within his jurisdiction, *is a record* importing absolute verity, and not to be contradicted by parol evidence. * * * It is positively certain that a recognizance taken by a justice of the peace *is a contract of record*, as well before as after its return." (The italics are his own.)

The statute in force at the time referred to, in regard to entries on the docket of a justice, was sec. 21, act of 1831, Swan's Old Stat., which provided that justices of the peace in criminal proceedings shall "keep a docket thereof as in civil cases;" and in civil cases the only provision was contained in sec. 3, act

of 1831, Swan's Old Stat., as follows: "Every justice of the peace shall keep a docket, in which he shall make a fair and accurate entry of all actions and suits instituted before him, with his proceedings thereon."

The statute, therefore, did not in terms direct any entry to be made on the docket of recognizances taken before the justice, but being a part of the history of a cause, became thereby a part of the record.

But however this all may be, the statute in question, in regard to the duties and record of a justice of the peace, unlike that in reference to the clerk of the court of common pleas, did not direct that the justice should make a record of all the material acts and proceedings of his court, and exercise the powers and perform the duties conferred and imposed upon clerks of courts of record by the common law; and, therefore, it may be said, that the same principles do not apply to each equally.

The objection that no complete record had been made up by the clerk in the attachment case is of no force. In the absence of a complete record, the pleadings, papers, journal and docket entries are admissible instead of it. 18 O., 535.

It is further objected, that the clerk had no right in any event to describe the bond as one "to be substituted for attachment," or to enter the names of the sureties; that if he had any duty to perform, it was to merely note "undertaking filed," with the date of filing.

We think this objection is not tenable. It has always been regarded as the duty of the clerk to specify what the paper is that is filed, and if an undertaking, what it is for; and it would be necessary for him to do so, to make a complete history of the cause, and more especially in such a case as this, where he was performing a duty especially enjoined upon him by an order of the court; and no good reason is apparent why he should not also enter the names of the sureties he accepted and approved. Clearly, the entry embraced or recited such facts only as it was his duty to do under the order.

This objection concedes that a material part of the entry was competent evidence—that part which went to show that a bond or undertaking had been filed—and therefore the objection should have been to that part only that was claimed to be incompetent, and not a general objection to the whole entry. Such an objection is properly overruled, if any material part of the evidence objected to is competent.

The bill of exceptions contains the full charge of the court to the jury, and states that defendants excepted to so much of the charge as related to the duty of the clerk to make the entry in question, and to the weight to be given to such entry by the jury, and our attention is called by counsel for plaintiffs in error to the following instruction as being the part of the charge excepted to: "Counsel for both sides have urgently argued their views of the law bearing upon the admissibility as evidence, and the effect of the entry on the docket on page —, 'Bond to be substituted for attachment filed January 9, 1875. A. L. Moffatt, A. B. Reid, George S. Case, surety.' The court is of opinion, if you find this entry was made by Mr. Hart, the clerk, and at the time it purports to have been made, it is proper matter of evidence to be considered by you with all other matters of evidence in the case, not only what the bond in effect was, but whether or not it was executed by the defendants. This entry, however, is to be given such weight only as in your judgment, in connection with the other evidence in the case, it fairly deserves."

The first exception as to the duty of the clerk to make the entry, if it has any reference to that part of the charge referred to by counsel, has been already disposed of in this opinion; and the second exception is as to the last sentence only of a part of the charge referred to. The exception is not to all of that part of the charge quoted, as claimed by counsel for plaintiffs in error, but only to so much of it as instructs the jury as to the weight to be given to that item of evidence, upon points they might consider it as evidence; and the court did not err in that, to the prejudice of the defendants below. The instruction could

only be erroneous by reason of the fact that the entry was conclusive between the parties of the facts stated in it, and if so, the defendants below could not complain that the court did not declare it to be conclusive, and permitted the jury to determine its effect.

The judgment must be affirmed.

*A. W. Jones* and *Jones & Gillmer*, for plaintiffs in error.

*Tuttle & Fillius,* for defendant in error.