Argued June 9; reversed September 14, 1932

IN RE EDWARDS' ESTATE
AMERICAN NATIONAL BANK *v.* GORDON
(14 P. (2d) 274)

*John W. Kaste*, of Portland, for appellant.
*Keith A. Caldwell*, of Portland, for respondents.

ROSSMAN, J. August 30, 1930, Thornton Edwards opened the aforementioned bank account with a deposit of $2,377.60. The account appeared upon the ledgers of the bank as "American National Bank, Portland, Oregon. Name, Thornton and Lillie B. Edwards." The two individuals just mentioned were husband and wife, and, at the time the account was opened, both subscribed their signatures to a card provided by the bank entitled "joint account" which recited:

"The American National Bank of Portland accepts the joint account herein provided for under the following conditions, which are accepted by the undersigned and constitute a contract between the bank and the

depositors and/or each of them. Deposits entered herein are payable to either of the undersigned or the survivor, subject to the state laws governing joint accounts, and in case of the temporary closing of this account, you are hereby notified that a deposit thereafter by either is to be payable to either or the survivor, in case of the death of either, unless you are otherwise notified. Each depositor is the general agent of the other and in case of overdraft by either, or overpayment to either, said overdraft or overpayment having arisen by error, mistake, inadvertence or other wise, they are jointly and severally liable to the bank for said overdraft or overpayment.''

Section 22-1407, Oregon Code 1930, provides:

''When a deposit has been or shall hereafter be made in any bank or trust company in the name of two or more persons, payable to any of such persons, such deposit or any part thereof, or any interest, or dividend thereon, may be paid to any of said persons, whether the other be living or not, and the receipt or acquittance of the person so paid shall be valid and sufficient release and discharge of such corporation for any payment so made.''

■ From the time that the account was opened with the original deposit of $2,377.60 until Thornton Edwards death, about eight months later, $5,207.46 additional money was placed in the account in 18 different deposits. Prior to his death, $6,142.84 was withdrawn in various sums by checks signed by either Mr. or Mrs. Edwards, leaving the sum of $1,444.22 in the account at the time of Edwards' death. In the circuit court an effort was made, through the testimony of Mrs. Edwards, to prove that all of the money deposited came from Mrs. Edwards' own investments. She testified that when she and her husband came to Portland several years ago he had neither money nor property, but that she was possessed of a considerable estate.

Some time after establishing their home in Portland, Mrs. Edwards acquired a parcel of real property in Portland and in the early part of June, 1930, borrowed $2,500 upon the security of it. After paying the expenses incidental to this loan, a balance of $2,377.60 remained with which the aforementioned account was begun. Later, Mr. Edwards entered business and at that time withdrew $1,500. In October of 1930 he obtained from the American National Bank the loan of $1,500 which we have already mentioned, and at that time deposited that sum in the aforementioned joint bank account. Thus out of the total of $7,575.06 which entered that account, we have accounted for $3,877.60. The balance of $3,707.46 of deposits, the source of which we have not mentioned, is accounted for in the testimony of the wife in only a vague and uncertain manner. Possibly due to poor memory resulting from old age or to unfamiliarity with the details of the transactions, Mrs. Edwards, as a witness, experienced great difficulty in identifying deposits and withdrawals. Her testimony made frequent use of the words "assumed," "supposed" or "believed" as she endeavored to show that the deposit money came from her estate in New York or from properties which she owned in Portland. She surmised that Edwards' business was unprofitable, and therefore assumed that none of the deposits represented money earned by himself. Her testimony—and it was substantially the only evidence offered at the trial—was so uncertain that the circuit court was unconvinced. Without a further review of the testimony, we state our acquiescence in this portion of the court's decision. But there remains for disposition the question of what effect attached when the joint bank account was opened in the above manner.

It is certain that $2,377.60 of the wife's funds and $1,500 of the husband's money went into the bank account. It seems highly probable that other sums were deposited by each. The money withdrawn by the wife, according to her testimony, was in such small amounts as are ordinarily needed for the maintenance of a household. Edwards withdrew at one time $1,500 which he used for partnership purposes, and it seems altogether likely that he also withdrew other sums. At his death $1,444.22 remained in the account, but we cannot say whether that balance was an unused portion of the wife's $2,377.60 or whether all or a part of it constituted the balance of unexpended deposits made by the husband. The account was a commercial one, and the evidence does not disclose which of the parties possessed the pass book. It seems, however, that Thornton Edwards was the one who actually carried the deposits to the bank whether the funds were his own or those of his wife. It seems fair to assume that when he deposited his wife's money he was acting as her agent, and, therefore, had the custody of the pass book in her behalf. Apparently Edwards and his wife never had nor contemplated having any accounting of their individual interests in this bank account, and seemingly reposed the mutual trust and confidence in one another commonly displayed by husband and wife. The problem now presents itself whether the form of the deposits constituted the wife the owner of the credit of $1,444.22 when she withdrew that sum of money following Edwards' death. We add that the balance was withdrawn by her in 23 checks, covering six months' time.

The increasing use of joint bank accounts makes the problem before us one of general importance. The fact that upon the death of the husband a sum is at

once available to discharge the expenses of the last illness and provide for household necessities, without court proceedings, has won for such accounts increasing favor. In fact, these accounts are regarded by people in modest circumstances as a poor man's will. Only an incidental phase of the problem has previously received attention by this court: *Lipman Oil Co. v. Schwind,* 132 Or. 381 (285 P. 1025). In that case we held that the mere fact that the account was in the joint names of husband and wife did not prove ownership in both. The problem now before us has been before numerous other courts. Excellent digests of many of the decisions may be found in 1 Paton's Digest, p. 301, § 1809, and in Brady's Banking Law Journal Digest, p. 146, §§ 354 and 355. See also the annotations in 48 A. L. R. 189, 1917C, L. R. A. 550 and 1916D Ann. Cas. 519. In most of the cases mentioned or reviewed in the above compilations the accounts were of a savings character and the funds deposited belonged originally to only one of the parties. Thus the one party could generally be regarded as the donor and the claimant the donee. But in the present instance the two parties were, in fact, co-depositors and whether the one deposited more than the other cannot be determined from the evidence.

Where the relationship of donor and donee was claimed, and the latter alleged a gift inter vivos, the courts have declined to recognize title in the survivor unless the gift was completed during the donor's lifetime by delivery of the pass book, which is generally regarded as symbolical of the chose in action. In those instances where a gift causa mortis was alleged the courts have insisted that the proof show that the donor anticipated death from an illness to which he was then

subject when the delivery was made. An alleged power of agency on behalf of the donee generally is unavailing when he becomes the survivor because death revokes the power. In some instances the courts have sustained the claim of the alleged donee on the theory that a trust had been created in his behalf through the instrumentality of the joint bank account. The trust theory has been criticized because the courts employ it even when the evidence fails to show that the parties had any thought of creating a fiduciary relationship. And it is evident that the laws applicable to trusts must be discarded for all purposes other than the creation of the trust. In a number of instances where the relationship of husband and wife existed, with the account payable to the survivor, the courts have held that the joint bank account is held by the joint depositors as an estate by the entireties, and have permitted the survivor to take by virtue of the laws applicable to such estates. In other instances where the relationship of husband and wife did not exist between the joint depositors and the account was made payable to the survivor, the courts determined the rights of the parties according to the laws applicable to a joint tenancy, the distinguishing feature of which is that the estate belongs to the survivor. In Massachusetts especially the courts have applied to the instrument effecting the joint deposit, when in the form of an agreement, the law of contracts, and if it provided that the survivor should take the balance the courts have entered judgment to that effect, based upon contractual rights. If the joint depositor is a beneficiary who paid no consideration, his rights under the contract theory are upheld on the ground that he received title to the account by a third party beneficiary contract.

■ It seems clear that under the facts of our case we need not concern ourselves with the gift theory. Since the parties had no thought of creating a trust, it likewise seems clear that no time need be spent with that theory. The provisions of the identification-contract card concerning agency manifestly have no application to our present problem. At any rate, the agency was terminated by death and the bank makes no claim that when it paid the balance to the wife it was unaware of the demise of the husband. In *Stout v. Van Zante,* 109 Or. 430 (219 P. 804, 220 P. 414), this court held that by reason of § 63-207, Oregon Code 1930, joint tenancies are abolished, not only in real property but also in personal property. That decision affords sufficient reason for not pursuing the joint tenancy theory. In the same decision this court held that a note secured by a mortgage in which the payees were husband and wife did not become their property as an estate by entireties and thereby pass to the wife as survivor upon the death of the husband. The decision pointed out: "The evidence entirely fails to disclose that there was any agreement between the husband and wife that upon his death the plaintiff should become the owner of his interest in the note." The decision did not hold that a contract which undertakes to create an estate by the entireties in personal property would be unlawful. In *Erwin v. Felter,* 283 Ill. 36 (119 N. E. 926, L. R. A. 1918E, 776), as explained in *Illinois Trust & Savings Bank v. Van Vlack,* 310 Ill. 185 (141 N. E. 546), the court held that a contract for an estate by joint tenancies in a bank account must be given effect, even though the laws of the state did not recognize such tenancies in personal property because the Illinois statutes did not render such contracts illegal. Since the statutes of Oregon do not prohibit estates by

the entireties in bank credits, but, in effect, authorize them (§ 22-1407, Oregon Code 1930) we are aware of no reason for failing to give effect to the entireties estate if the parties actually created one. Many courts hold that estates by entireties may exist in personal property. See the annotation in 8 A. L. R. 1017. See also 13 R. C. L., Husband and Wife, p. 1105, § 128, and 30 C. J., Husband and Wife, p. 574, § 107. The courts have frequently held that a tenancy by the entireties may exist in a bank credit, 13 R. C. L., Husband and Wife, p. 1106, § 129, and see the cases digested in 8 A. L. R. 1017 and 30 C. J., p. 574, § 107. For a discussion see 34 Dickinson Law Review 156. But in *Marble v. Treasurer and Receiver General,* 245 Mass. 504 (139 N. E. 442), the court pointed out that the right of a joint depositor to withdraw the entire balance and thereby destroy what would otherwise constitute an estate by the entireties "violates the essential character of a joint tenancy or an estate by the entirety," yet it held that upon the death of one of the joint depositors the bank credit became the property of the survivor. Bank deposits of a husband and wife, payable to either or the survivor, are several as well as joint, and thus either spouse, without the consent of the other, may transfer the property. Such power is inconsistent with the underlying principle of entireties that neither party can destroy the other's interest in the whole. In fact, it would seem that if an estate by entireties is held by husband and wife in a bank credit the withdrawal checks would have to be signed by both. See, for instance, *Milano v. Fayette Title & Trust Co.,* 96 Pa. Super. 310, and discussion in 4 Temple Law Quar. 182. Yet the courts have not been insistent upon all of the niceties of the situation, and have disavowed any intention of searching for defeating technicalities

440

in order to overthrow the manifest intention of the parties. The decisions seem to indicate that quasi joint tenancies and quasi estates by the entireties suffice. Even though the statutes of this state do not render illegal contracts which undertake to create estates by entireties in bank credits, yet the reasons pointed out by the Massachusetts court in the case just mentioned, together with the circumstance that this was a commercial account, changing from day to day, renders it extremely difficult to apply to the situation the law applicable to such a tenancy. Nevertheless, it seems highly probable that the two Edwards, who were elderly people, believed that they held the account per my et per tout and that upon the death of either the survivor would become the owner per tout. And since people commonly regard the effect of joint bank accounts of husband and wife in the manner just indicated, the bank evidently knew the construction which the joint depositors would place upon the instrument which it tendered for signature. We pass on to a consideration of the contract theory, reminding ourselves at the outset that in this state all of the wife's civil disabilities have been removed and that she is at liberty to contract with her husband. Sections 33-201 and 33-215, Oregon Code 1930, and *King v. Voos*, 14 Or. 91 (12 P. 281).

When Mr. Edwards, June 28, 1930, deposited in the bank the sum of $2,377.60, with the approval of his wife, the relationship of debtor-creditor was created between the bank and the two Edwards. The legal status of the account was a chose in action. 7 C. J. 641. The bank now having become the debtor, the parties had the right to name as the creditor or creditors any individual or group which they chose, and also to provide that the happening of any con-

tingency, as, for instance, death of the creditor or any of the creditors, should of itself change the identity of the obligee or obligees. Such being their rights, the three agreed that both of the Edwards or their survivor should be the creditors and that each should have the right to withdraw all or any part of the bank balance. Surely that agreement was based upon a valuable consideration, for the bank received $2,377.60 for its promise, and promised to give no more than it received. Possibly no consideration was expressed for Mrs. Edwards' promise to permit her husband to withdraw all or any part of the deposit, but it seems evident that each of the Edwards contemplated the making of more deposits, and regarded the contract which they were effecting as one which would transfer the interest each owned, possibly as tenant in common, in those funds to the other upon survivorship; and such a contract, it is well established, is based upon a valuable consideration. Thus the bank and the Edwards anticipated that the account might survive the life of either of the two Edwards, and the bank agreed to honor the withdrawal demands of the survivor. The validity of contracts by which one of several obligees becomes entitled to receive all that is promised upon survivorship is well established. We quote from Williston on Contracts, § 344. "Survivorship also applies to joint obligees. If one of them die, the entire right vests in the survivors." See also Page on Contracts, § 2080; 13 C. J., Contracts, p. 576, § 563; *Israel v. Jones,* 97 W. Va. 173 (124 S. E. 665); and 3 Minn. Law Rev. 348. It seems evident that the wife did not obtain her rights through her husband by the process of a gift, but directly from the bank for a valuable consideration. Her right to demand whatever balance remained in the bank in the event of her survivorship

was complete and beyond the power of the bank to revoke. Her interest in the balance, to be paid upon survivorship, was acquired in praesenti. Since they were obtained for a consideration and were irrevocable, they were not testamentary in character.

In *Chippendale v. North Adams Savings Bank,* 222 Mass. 499 (111 N. E. 371), one Williams who owned savings bank credits in two banks, and who kept his deposit books in a tin box, went to the two banks, accompanied by his sister, and there the following incidents occurred. At the first bank there was inserted in his books, at his request, the following entries: "Payable also to Abbie Worthington" and "Either party or the survivor of them may draw the whole or any part now or hereafter deposited on this account with interest." After these words had been written, Mrs. Worthington signed the bylaws of the bank and wrote her signature upon an identification card provided for depositors. At the other bank there was written after the depositor's name: "May be drawn by his sister, Abbie Worthington." Here also she signed the bylaws and an identification card. The books were then returned to the tin box which was delivered to the bank for safe-keeping, subject to an agreement that both Williams and Mrs. Worthington should have access to it. Williams kept the key until his death, but Mrs. Worthington had a duplicate key. At Williams' request a label was attached to the box reading: "Property of Abbie Worthington." At Mrs. Worthington's request, an official of the bank where the box was deposited gave her a receipt reading as follows: "Received of Abbie Worthington one small box, tin, locked, to be held for safe-keeping." In upholding the right of Mrs. Worthington to the deposits, the court said:

"The new deposit in the Hoosac Savings Bank by its terms was a deposit to be paid during the lives of Williams and of Mrs. Worthington or either of them as they should call for the deposit or a part of it, and the balance (not withdrawn during their joint lives) was to be paid to the survivor of them. Such a contract between a depositor or depositors and the savings bank is a valid contract. If Mr. Williams had gone to the savings bank with a sum of money he could have made such a contract with the savings bank. What took place was the equivalent of that by reason of a novation with respect to the account theretofore on deposit in Williams' name alone. * * * In such a case there is no gift of the balance upon the death of Williams. Mrs. Worthington (when she survived Williams) became the owner of the balance undrawn by virtue of the contract of deposit, and not by virtue of a gift which took effect on Williams' death. Mrs. Worthington takes as survivor by virtue of the terms of the deposit in the same way that a joint tenant takes as survivor where land has been conveyed (as it may be conveyed, through a conduit) by way of gift to the donor and donee as joint tenants."

From *Perry v. Leveroni,* 252 Mass. 390 (147 N. E. 826), we quote:

"As to the deposit in the County Savings Bank, the agreed facts show that it was made in the names of the husband and wife and was payable to either of them or the survivor. It is also agreed that both signed and delivered to the bank the usual identification cards. Upon these facts there was no gift during the husband's lifetime and no gift of the balance upon his death. There was, however, a completed contract between the depositor and the bank, assented to by Mrs. Morse, by which, upon the death of her husband she became the owner of the balance of the deposit. It is immaterial that the bank book remained in the posession of Morse. By the terms of the contract the balance belonged to her as the survivor. It was not a

gift to take effect at his death, and the fact that the statute of wills was not complied with does not affect her right to the deposit. In principle the case at bar cannot be distinguished from Chippendale v. North Adams Savings Bank, 222 Mass. 499, 111 N. E. 371.''

We quote from *Deal's Admr. v. Merchants and Mechanics Savings Bank,* 120 Va. 297 (91 S. E. 135, L. R. A. 1917C, 548), the facts being sufficiently stated in the quotation as follows:

''We are of the opinion that, under the facts of this case, the effect of the deposit by Mrs. Deal to the joint credit of herself and her sister was to create a contract relation between the bank and the two joint depositors, under which the amount to the credit of the account became the property of Ellen C. Holland as the survivor of decedent and herself.''

A similar problem was before the Maryland court in *Metropolitan Bank v. Murphy,* 82 Md. 314 (33 Atl. 640, 31 L. R. A. 454, 51 Am. St. Rep. 473). Its nature and the court's disposition of it is thus stated in the decision:

''The property in controversy consisted of deposits in the appellant bank, which by the direction, authority and request of said Michael, assented to by the appellant [the bank] was entered in the books of said bank to the credit of himself and wife, with the understanding and contract with the bank endorsed thereon as hereinbefore stated. The parties were *sui juris* capable of contract and having actually contracted the law exacts fulfillment which the appellant has done. * * * At the death of the husband the bank paid over to the wife the balance of the account, and in doing so carried out in good faith the strict letter of its contract. This is not a case where the husband retained possession and control of the account in bank, and continued to draw therefrom such sums as his wants might indicate, as was the case in Dougherty v. Moore, supra,

and in many other cases. Nor is the language controlling the ultimate disposition of the joint account in this case in any respect similar to that of Dougherty v. Moore. The bank's instructions in opening the account were that said account shall be subject to the order of either husband or wife, and at the death of either the balance shall *belong* to the survivor. It is neither the object of the law nor the duty of the Court to seek by narrow and technical construction the means of invalidating a contract clearly expressive of the intention of the contracting parties, and we think nothing could be clearer than the object and intention of the parties to the contract in the language employed by them in opening the joint account.''

From *Cleveland Trust Co. v. Scobie,* 114 Ohio St. 241 (151 N. E. 373, 48 A. L. R. 182), we quote:

''However, we prefer to place our holding upon the ground above indicated. After all, upon deposit of an account the bank is constituted a debtor, and when the depositor orders the bank to pay himself or another upon order of either party, notifies the second party of the completed transaction, and secures her signature evidencing assent to the arrangement, and notifies her of the completed transaction, he has created in the second party by contract a joint interest in his right to the deposit equal to his own.''

In *Erwin v. Felter,* 283 Ill. 36 (119 N. E. 926, L. R. A. 1916E, 776), the facts were that a Mrs. Emily C. Rusk deposited in a bank four sums of money and in each instance accepted in return certificates of deposit. Omitting formal parts, one of these read as follows: ''This certifies that Mrs. Emily C. Rusk has deposited in this bank $2,000 payable to the order of herself or Mrs. Martha D. Erwin, or the survivor of either, six months after date, with interest to maturity only at the rate of 3 per cent per annum on return of this certificate.'' The other three certificates were similar in all mate-

rial respects. The certificates were left with the bank which thereupon issued to Mrs. Rusk appropriate receipts, reciting the contents of the certificates. The issue before the court was whether Mrs. Erwin, daughter of Mrs. Rusk, or the estate of Mrs. Rusk was entitled to collect the money. In sustaining the rights of Mrs. Erwin, the court said:

"The form of the certificates indicates an intention to create a joint tenancy in the money. * * * These writings constituted the contract on the part of the bank, Mrs. Rusk and Mrs. Erwin. * * * The bank was authorized to pay Mrs. Erwin not merely as the agent of Mrs. Rusk but as a payee of the certificates. * * * The writings clearly manifest Mrs. Rusk's desire that her daughter should have a joint interest with her in these sums of money, and that the survivor should have the whole, and she, therefore, carefully made the contract whereby either could withdraw such sums as they might choose during their joint lives and the balance should go to the survivor."

Without quoting further, we cite the following authorities in support of the contract theory: *Reder v. Reder,* 312 Ill. 209 (143 N. E. 418); *Illinois Trust & Savings Bank v. Van Vlack,* 310 Ill. 185 (141 N. E. 546); *Commonwealth Trust Co. v. Grobel,* 93 N. J. Eq. 78 (114 Atl. 353); *New Jersey Title Guaranty & Trust Co. v. Archibald,* 91 N. J. Eq. 82 (108 Atl. 434); *In Re Rehfeld's Estate,* 198 Mich. 249 (164 N. W. 372); *Negaunee National Bank v. LeBeau,* 195 Mich. 502 (161 N. W. 974, L. R. A. 1917D, 852); 38 Harvard Law Rev. 243.

The intent of the depositors being always the controlling factor, we know of no reason why the contract of the parties should not be given full effect. Where no evidence of intent is available except the form of the deposit, that must control. But when the intention is

evidenced by a written agreement the question of intention ceases to be an issue and the courts are bound by the agreement. 5 Michie on Banks and Banking, § 46. All parts of the contract are free from ambiguity with the possible exception of the meaning to be attached to the word "payable" found in the contract. Well established rules of interpretation justify us in placing ourselves in the position of the parties. We, therefore, take note of the fact that both husband and wife had passed the age of 70 when the account was opened. Such being true, they were very likely especially solicitous concerning the disposition of the account upon the death of either. The wife with whose funds the account was begun and who had the only income at that time, without doubt, was attracted by the survivorship feature of the contract suggested by the bank. These facts, together with the circumstance that joint bank accounts of husband and wife providing for the payment of the balance to the survivor are generally regarded as means of passing the account to the survivor without the expenses incidental to probating the estate, and also as a means of avoiding inheritance taxes, are factors worthy of consideration when determining the meaning of the word "payable." It is true that the word "payable" may mean that when the bank passes the money to the survivor it does not acknowledge title in him, and it is also very likely true that section 22-1407, Oregon Code 1930, was not enacted for the purpose of determining rights between depositors but only for the purpose of protecting the bank. The latter proposition is announced in *Union Trust Co. v. Hutchison,* 27 Ohio App. 284 (161 N. E. 222). But the word "pay" generally signifies the discharge of a debt or the rendering to another that which is due. As previously stated, Mrs. Edwards paid the

bank a valuable consideration for its promise to pay her. We believe that when the word "payable" was inserted in the contract the parties meant that the balance should belong to the survivor and should be delivered to him or her as a sum to which he or she was entitled. Such being our conclusion, it follows that when the bank paid the balance to Mrs. Edwards it became her money.

The above conclusions demand a reversal of the judgment of the circuit court.

BEAN, C. J., BROWN and BELT, JJ., concur.