CHARLES E. HAY, Admr.

v.

MARY E. BENNETT *et al.* by next friend, Mary E. Bennett.

*Filed at Springfield October 30, 1894.*

1. PERSONAL PROPERTY—*survivorship in joint estate abolished.* The common law rule of survivorship in respect to personal property jointly owned has been abolished in Illinois by statute, in force since January 13, 1821.

2. PRACTICE—*manner of questioning jurisdiction.* Objection to the jurisdiction of a court of chancery, on the ground that an adequate remedy is afforded in the county court by the statute concerning administration, should not be presented for the first time in a court of review.

3. ADMINISTRATION—*what will charge one as administrator de son tort.* Where an executor named, having the will in possession, fails to probate it, but assumes to manage and control the property, recognizing it as subject to the testamentary provisions, his estate after his decease will be charged with his defaults as executor.

4. SAME—*when trust fund need not be identified.* Where the assets of an estate are sufficient to pay all prior claims preferred under the statute, a decree ordering payment of trust money as a claim of the sixth class is not erroneous, even though the trust fund is not identified and separately impressed with the trust.

· 5. DECREE—*effect of reversal on appeal by one of several.* The reversal of a decree on an appeal by one party is a reversal of the whole decree, and a party not appealing, who has been paid money under the decree before the reversal, must account for the sum so paid.

6. SAME—*duty of party so paying, upon second trial.* A party paying money to another party to the same suit under a decree afterwards reversed, should, on a second trial, call upon the court, by cross-bill or otherwise, to grant relief from the payment so made under the reversed decree.

7. SAME—*consequence of failure to ask relief.* Where a party so paying money seeks no relief on the second trial, but affirms in his pleadings the binding force of the former decree as to the party to whom he paid, he cannot complain in a court of review that no relief was granted him on such re-trial.

8. SAME—*rule as to effect of reversal on third parties does not apply.* The rule that reversal does not affect the rights of third parties acquired under a decree while in force, has no application to the parties to the suit, who are charged with notice of every step, and are bound to know the proceedings are legal.

9. By the reversal of a decree, all who are parties to the suit in which the decree was entered are restored to their original rights. *Goudy* v. *Hall*, 36 Ill. 313, explained.

10. SAME—*infants cannot consent to decree.* Infants are incapable of consenting to a decree which deprives them of their property, and a decree entered by consent, which is not supported by evidence, does not bind them.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

This was a bill in equity, filed on the fourth day of August, 1887, by Mary E. Bennett and Annie E. Bennett, two of the appellees, by Mary E. Bennett, their mother and next friend, wherein John S. Bradford, administrator of the estate of Samuel H. Treat, deceased, George W. Murray, administrator of the estate of Sarah M. Bennett, deceased, and Charles W. Bennett, were made parties defendant. Subsequently Chesley M. Bennett, by Mary E. Bennett, his next friend, became a party complainant. The bill alleged that in 1869 Sarah M. Bennett, the mother of complainants' father, died, leaving a last will and testament, which is set out in the bill. By the first, second and third items it is provided as follows :

"*First*—I give and bequeath to my executors the sum of $10,000, on the trust following : The income to be paid to my son, Charles W. Bennett, during his natural life ; on his death the said sum of $10,000 to be equally divided among his children ; and in case of his decease without issue, the said sum of $10,000 to be equally divided between his aunts, Jane D. Hunt and Annie E. Treat.

"*Second*—All the rest of my estate, real and personal, I give and bequeath to my son, Charles W. Bennett.

"*Third*—I nominate and appoint Samuel H. Treat sole executor of my estate."

That after the death of the said Sarah M. Bennett, Samuel H. Treat, the executor therein named, retained

the said will in his custody and never presented the same for probate, but took into his custody all the property of Sarah M. Bennett, consisting of money and promissory notes bearing interest at the rate of ten per cent per annum, said notes amounting, at the date of the death of Sarah M. Bennett, to about $20,000; that Samuel H. Treat retained control of all the moneys and property of the said Sarah M. Bennett, deceased, until the 27th of March, 1887, when he died, intestate; that on the 30th of March, 1887, John S. Bradford was appointed his administrator by the probate court of Sangamon county, Illinois; that after the death of Samuel H. Treat the will of Sarah M. Bennett was found among his papers, and was admitted to probate in the county court of Sangamon county on the 7th day of July, 1887, and George W. Murray was appointed administrator of the estate of Sarah M. Bennett with the will annexed, and that since said appointment said Murray, as such administrator, has filed a claim in the said probate court against the estate of the said Samuel H. Treat for the sum of $10,000,—the amount which will be due complainants on the death of their father, Charles W. Bennett, according to the terms of the will of the said Sarah M. Bennett; that complainants are the only living children of Charles W. Bennett, who was the only child of Sarah M. Bennett; that by the will of Sarah M. Bennett, $10,000 was set apart and placed in the hands of her executor, the said Samuel H. Treat, to be by him preserved as a trust fund, and paid to the children of Charles W. Bennett at his death; that the said Charles W. Bennett is still living, and while so living is entitled to the income from said trust fund; that the court appoint a successor in trust of the said Treat to receive the said sum of $10,000 placed in the hands of the said Treat by said will, as a separate and sacred fund for the children of the said Charles W. Bennett, invest the same under the direction of the court, paying the income thereof to the said Charles W. Bennett during his life,

and the principal of the same to the surviving children of the said Charles W. Bennett at his death, and for process and answer, but not under oath.

The answer of Charles W. Bennett admits the death of Sarah M. Bennett, his mother, as alleged in the bill, leaving the will as therein described, which will was not probated until as alleged in the bill; also that complainants are his children, and that they are entitled, at his death, to the sum of $10,000 from the trust fund placed in the custody of the said Samuel H. Treat under the will of Sarah M. Bennett; that George W. Murray is the administrator with the will annexed of the estate of Sarah M. Bennett, and that the said Samuel H. Treat never offered for probate the said will, but acted under and by virtue of its terms so far as to pay this respondent a portion of the amount placed in his hands by the said Sarah M. Bennett; that all other allegations of the bill are true.

The answer of John S. Bradford, administrator of the estate of Samuel H. Treat, admits the death of Sarah M. Bennett about October 30, 1869; that she left a will as set out in the bill, and that the same was found at the residence of Samuel H. Treat after his death, but denies that the same was placed in the custody of Treat for safe keeping by testatrix, or that he had knowledge of its existence; denies that Samuel H. Treat took possession of any property belonging to Sarah M. Bennett at or since her death, and that in truth she was not the owner of any property, real or personal, in her own right, at the time of her death; that long prior to the death of Sarah M. Bennett certain notes were placed in the hands of Samuel H. Treat by the husband of Sarah M. Bennett, or some person unknown to respondent, to be held in trust for the benefit of Sarah M. Bennett and Charles W. Bennett during their joint lives, and at the death of Sarah M. Bennett the fund to be paid to Charles W. Bennett; that said Treat took charge and control of said

assets, loaned and reloaned money, and received and paid
for the benefit of his *cestuis que trust*, before and since the
death of Sarah M. Bennett, and that no part of said funds
in his hands was under the control of Sarah M. Bennett
or subject to her disposal, by will or otherwise. The re-
spondent admits that on proper accounting there is a
small amount due Charles W. Bennett, but denies there is
anything due complainants; admits the death of Samuel
H. Treat on March 27, 1887, and that respondent was on
March 30, 1887, appointed administrator; that George W.
Murray has been appointed by the same court adminis-
trator with the will annexed of the estate of Sarah M.
Bennett, and that he has filed a claim, as such adminis-
trator, against the estate of Samuel H. Treat for $10,000,
and denies all other allegations.

Charles W. Bennett filed a cross-bill, making all other
parties to the original bill defendants; alleging the death
of Sarah M. Bennett, and that she left a will, as set out in
the original bill; that the will was left in the custody of
Samuel H. Treat, who failed to present the same for pro-
bate, and the same was not probated until after his death;
that Treat took possession of all the property of Sarah
M. Bennett, deceased, and retained the same in his pos-
session without probating the will or obtaining any au-
thority to hold the same, and did use, retain and possess
all of said property, and the proceeds thereof, as his own
property, until the date of his death; that the said Samuel
H. Treat did receive and so appropriate of the property
of the said Sarah M. Bennett at the time of her death, the
following: Money on hand, $914.61, notes and mortgages,
$19,386.54, notes, $3000, making a total of $23,301.15; that
all of said notes bore ten per cent interest, and that said
Treat placed said $914.61 at interest at the same rate,
and received the income thereof from the death of Sarah
M. Bennett until his death; that the interest on said sums
would amount to $2330.11 per annum, all of which, accord-
ing to the terms of the will, should have been paid to com-

plainant by said Treat, as well as the sum of $13,301.15, being the amount placed in his hands, under the terms of the will, in excess of the sum of $10,000 to be by him held in trust for the children of the complainant; that about the month of May, 1874, the said Samuel H. Treat rendered complainant an account, which showed there was in his hands belonging to said estate, in secured notes, a principal sum of $17,463.56, and cash on hand, $2335.11, making a total of $19,798.67, besides the interest then due and payable on the same; that said statement included all amounts paid by Samuel H. Treat to complainant and every other person to whom the estate of Sarah M. Bennett was indebted, and also stated the balance in his hands belonging to said estate on the first day of May, 1874, less the interest due and unpaid upon the notes and securities he held, which unpaid interest complainant believes was in the neighborhood of $5000; that complainant has received many sums of money taken from the income of the said fund since the first day of May, 1874, the total amount of which he has no means of accurately ascertaining, but that an account of such payments was kept by the said Samuel H. Treat and is now in the possession of said administrator of his estate, but he distinctly denies that he has ever received any portion of the principal of the estate of the said Sarah M. Bennett, and, as he believes, but a portion of the income thereof due him; that Samuel H. Treat took and held the moneys and securities belonging to the estate of Sarah M. Bennett without having probated her will or given bond and security, and he thereby became executor *de son tort* of said estate, and as such the administrator of his estate should be required to make an account, etc.; that he has never had any settlement or accounting, etc. The prayer of the cross-bill is, that the administrator of the estate of Samuel H. Treat pay complainant in the cross-bill the sum found to be due to him on an accounting, as a sixth-class claim, and for general relief.

The answer of George W. Murray, administrator of the estate of Sarah M. Bennett, to the original bill, filed May 7, 1888, denies all allegations affecting the estate of Sarah M. Bennett.

The answer of John S. Bradford, administrator of the estate of Samuel H. Treat, deceased, to the cross-bill of Charles W. Bennett, filed in December, admits the death of Sarah M. Bennett, and sets up substantially the same facts as in his answer to the original bill; admits that Charles W. Bennett is entitled to an account, and is ready and willing to aid in that direction, so far as in his power. Defendant adopts as his answer to the cross-bill his answer to the original bill, in so far as the statement of assets and accounts is concerned and in so far as otherwise applicable, and denies all other allegations in the cross-bill.

Mary E. Bennett and Annie E. Bennett, infants, by W. E. Shutt, their guardian *ad litem,* filed an answer to the cross-bill of Charles W. Bennett.

On May 7, 1888, the court entered a decree, finding that the funds held by said Treat belonged jointly to said Sarah M. and Charles W. Bennett, and that on the death of said Sarah the said Charles W., as surviving owner, took the entire estate, and that nothing passed by the will; that at the death of the said Samuel H. Treat no final account had been rendered by him to the said Charles W. Bennett; that upon stating an account between said Bradford, administrator, etc., and said Charles W. Bennett, there is now due to the said Charles W. Bennett from the estate of the said Samuel H. Treat the sum of $3500. The court therefore ordered, adjudged and decreed that said administrator pay to Charles W. Bennett the sum of $3500 out of any money in his hands belonging to the estate, but not in due course of the administration, and when such sum shall be paid the estate of the said Samuel H. Treat shall thereby be released and absolved from any and every claim of whatsoever kind, of any nature, on

the part of any of the parties to this suit, growing out of the administration of the said trust estate of Sarah M. and Charles W. Bennett by the said Samuel H. Treat during his life, or by the said Bradford, administrator of his estate, since his death, and that the administrator pay the costs.

On July 28, 1890, there was filed in said circuit court a final order of the Supreme Court of the State of Illinois reversing said decree, and remanding the cause to the circuit court for further proceedings. In this final order it appears that only Mary E. Bennett and Annie E. Bennett were plaintiffs in error.

On the 6th of April, 1891, John S. Bradford, administrator of the estate of Samuel H. Treat, deceased, filed an amended answer to the complainants' bill, setting up the former decree, and that he paid said sum of $3500 to said Charles W. Bennett, and that said Charles W. Bennett did not appeal from said decree, and that the same is in full force and unreversed as to him.

The cause was duly heard, and a decree was rendered finding "that said Samuel H. Treat died intestate, as alleged, and that the county court appointed said John S. Bradford administrator of the estate of said Treat; that at the time of his death the said Samuel H. Treat was a trustee, as such holding and managing a fund of $10,000 for the use of Charles W. Bennett during his lifetime, and to go to his children at his death; that said sum of $10,000 was so held and managed by said Treat under the will of Sarah M. Bennett; that in and by said will the said Treat was named and designated as the sole executor thereof; that said Sarah M. Bennett died on or about the 30th day of October, 1869, testate; that said Treat, from the time of the death of said Sarah M. Bennett till the time of his death, as aforesaid, held in his custody the said will of Sarah M. Bennett, and also took and held her estate, and that after the death of said Treat the said will of Sarah M. Bennett was duly admitted to probate and rec-

ord in the county court of Sangamon county, Illinois; that Charles W. Bennett still lives, and his only children are Mary E. Bennett, Annie E. Bennett and Chesley M. Bennett, the latter having been born since the beginning of this suit, and having been made a party thereto as complainant on motion of complainants; that said trust fund so held by said Treat, at his death passed into the hands of said Bradford, as administrator, as aforesaid, but was not subject to administration by said Bradford as part of the estate of said Treat." It was therefore ordered, adjudged and decreed by the court, "that said John S. Bradford, administrator as aforesaid, pay over to Samuel Haines, trustee, the said sum of $10,000, to be by the said Haines held and managed as provided for in and by the will of said Sarah M. Bennett; that said Samuel Haines hold and manage said trust fund of $10,000 as the successor of said Treat, and that said Samuel Haines, before entering upon his duties as such trustee, shall give and enter into a bond in the penal sum of $15,000, with sureties to be approved by the court, conditioned to faithfully hold and manage said trust fund as above provided and set forth, and to account for the same whenever required by the court," etc.

The said John S. Bradford appealed from said decree to the Appellate Court for the Third District, and while the appeal was pending in that court he died, and Charles E. Hay, administrator *de bonis non*, appeared and became a party in his stead. The decree was affirmed in the Appellate Court, and from the judgment of affirmance this further appeal was taken.

The opinion of the Appellate Court was as follows:

WALL, J.: "The most important question arising in the case is involved in the point made last in the brief of appellant, *i. e.*, whether the common law rule of survivorship in respect to personal property jointly owned prevails in this State. If this question can be answered affirmatively, the complainants in the bill had no standing in court.

"We are persuaded the rule has been abolished by statutory provisions in force since January 13, 1821. Sections 1, 2, 3 and 4 of the act then passed, entitled 'An act concerning partitions and joint rights and obligations,' are as follows:

" 'Sec. 1. That all joint tenants, or tenants in common, who now are or hereafter shall be possessed of any estate of inheritance, or estates less than those of inheritance, either in their own rights or in the rights of their wives, may be compelled to make partition between them of such lands, tenements or hereditaments as they now hold, or hereafter shall hold, as joint tenants or tenants in common: *Provided, however,* that no such partition between joint tenants or tenants in common who hold or shall hold estates for life or years, with others holding equal or greater estate, shall prejudice any entitled to the reversion or remainder after the death of the tenants for life or after the expiration of the years.

" 'Sec. 2. That if partition be not made between joint tenants, the parts of those who die first shall not accrue to the survivor or survivors, but descend or pass by devise, and shall be subject to debts, dower, charges, etc., or transmissible to executors or administrators, and be considered, to every intent and purpose, in the same view as if such deceased joint tenants had been tenants in common.

" 'Sec. 3. That for assuming and exercising exclusive ownership over, or taking away, destroying, lessening in value, or otherwise injuring or abusing, the thing held in joint tenancy, tenancy in common or parcenary, the party aggrieved shall have his action of trespass or trover for the injury, in the same way as if such joint tenancy, etc., did not exist.

" 'Sec. 4. That all joint obligations and covenants shall hereafter be taken and held to be joint and several obligations and covenants.'

"In the revision of 1833 (p. 473) the same provisions are found under the same title, but in the revision of 1845, section 1 was transferred, in substance, to chapter 79, entitled 'Partitions,' while sections 2, 3 and 4 became sections 1, 2 and 3 of chapter 56, entitled 'Joint rights and obligations,' and so the provisions may be found in the revision of 1874, chapters 76 and 106. In the revision of 1845 a slight change was made in section 3, the words 'any property' having been substituted for the words 'the thing.'

"It seems reasonably clear that section 2 of the act of 1821, being section 1 of the present chapter 76, is broad enough to include personal as well as real property, and that some of the phraseology, to-wit, that referring to transmissibility to executors and administrators, is especially applicable to personal estate. Section 3 of the original act (section 2 of chapter 76) manifestly includes a reference to personal property held in joint ownership, and has been so construed by our Supreme Court. (*Benjamin* v. *Stremple*, 13 Ill. 466; *Boyle* v. *Levings*, 28 id. 314; *German National Bank* v. *Meadowcroft*, 95 id. 124.) Regarding these sections together, as we necessarily must, strengthens the position of the appellee. After a full consideration of all arguments adduced by counsel, we are satisfied with the conclusion reached by the circuit court on this branch of the case.

"Returning now to the points made by appellant in the order as they appear in the brief : It is urged, first, that the relief is not within the jurisdiction of a court of equity. This objection does not appear to have been pressed in the court below, and the position now taken, that an adequate remedy at law is afforded by the statute in reference to administrations, should not be presented for the first time in this court. (*Chicago Theological Seminary* v. *Gage*, 103 Ill. 175.) But we think the subject matter and the conditions are such that the county court could not adequately deal with the rights of the parties, and

that a resort to chancery was proper, and, indeed, necessary.

"The next point, that necessary parties were omitted, must also be overruled. There was no attempt to administer the estate generally, but merely to withdraw from the hands of the administrator a certain fund, as not belonging to the estate, and to place it in the hands of a trustee, to be managed according to certain directions contained in the will of Mrs. Bennett.

"In this connection may be noticed the point fifthly made, that the decree is erroneous in charging the estate of Samuel H. Treat with any act or default of his, as executor or trustee under said will. It is true, the executor named in the will did not present the same for probate, and did not formally act as executor, but he assumed to manage, handle and control the property affected by the will, and there was evidence tending to show that he recognized it as the property of the testatrix, and as subject to the testamentary provisions. We are unable to see any force in this objection.

"A further point is made that there has been no such identification of the trust fund, or of its proceeds, as will enable the court to lay hold of any property in the hands of the administrator as impressed with the trust. A majority of the court are of the opinion this point is not well taken, and that the decree in this respect is sufficiently supported by the proof. The statute provides that where a decedent has received money in trust for any purpose, his administrator shall pay the same out as a sixth-class claim. (Rev. Stat. chap. 3, sec. 70.) The claim thus arising takes precedence of other debts and demands of a general nature, which constitute claims of the seventh class. On examining the report of the administrator, which appears in the abstract, it is quite evident that there were ample funds for the payment of all claims of the first, second, third, fourth and fifth classes. It follows, that even though the identification of the funds, or

the proceeds thereof, may not be what the law would require, yet by virtue of this provision of the statute the money in question must be paid out in preference to the claims of ordinary creditors, and that no error was committed in this respect, since the rule of the statute has been substantially carried out.

"Finally, it is objected the decree is erroneous in providing that the money should be managed by the trustee as provided in the will, because it thereby gives Charles W. Bennett the income of the money during his lifetime, when, by the former decree in the case, it was found that though he was entitled to all the money remaining in the hands of said Treat, the balance so due him was but $3500, for which a decree was rendered, and that the money had been paid him. It is suggested, therefore, that in making the further provision for him, as was done in this decree, the court erred, and it is argued that the income of the $10,000 should be used to reimburse the estate of Judge Treat the amount thus paid to said Bennett in excess of what should have been paid to him. It appears that the former decree was in fact rendered by consent, though the decree upon its face does not so show, and that C. W. Bennett did not appeal from it.

"We are inclined to hold that the entire decree was reversed, although C. W. Bennett did not appeal. Hence it would seem that the matters arising upon the cross-bill should have been examined. It will be noticed that the allegations of the cross-bill, as well as of Bennett's answer, are consistent with the theory of the original bill. The cross-bill merely seeks an accounting as to the balance due C. W. Bennett as owner of one-half of the money originally placed in the hands of Judge Treat, and as residuary legatee of his mother. The first decree, however, found that he took the whole as survivor, and that there was due him on that account $3500. This amount was at once paid him, and when the decree was reversed it may be conceded that he should account for it to the admin-

istrator. Now, the question is, in what way may the administrator have relief? Probably he could recover the amount in an action at law, but he might also have relief in this proceeding, the parties all being before the court. In order to have such relief, it would be necessary that the court should be properly called upon at the instance of the administrator.

"It seems that the issue made up on the cross-bill of C. W. Bennett was not presented to the court on the last hearing, and there appears to have been no examination of the question as to the amount due him from the estate. This branch of the case was, in effect, ignored or passed over. The record shows that the cause was submitted upon the issues made on the original bill, and the answers and the replications thereto. It is not indispensable that the issue arising on the cross-bill should be heard along with that arising on the original bill. *Myers* v. *Manny*, 63 Ill. 211.

"The amended answer of Bradford sets up the former decree; that he paid said sum of $3500 to C. W. Bennett; that said Bennett did not appeal therefrom, and that the same is in full force and unreversed as to him. It would appear, therefore, that the administrator was disposed to regard the former decree as a finality, so far as C. W. Bennett was concerned, and that no effort was made to interpose it as a bar to the relief sought by the complainants. Assuming that that decree was reversed, and that the money paid thereunder should be accounted for by C. W. Bennett, and that he should be required to refund it, or that his income on the $10,000 should be used to reimburse the estate for the excess received by him, the question is, whether, upon the pleadings and evidence, the present decree is erroneous because containing no such provision. In the first place, it is not apparent what, if any, excess Bennett really has received, assuming that he took nothing as survivor; and in the second place, we are inclined to think that, under the pleadings as made up, the admin-

istrator should not now be heard to make the point. By his amended answer he affirmed the binding force of the former decree as to C. W. Bennett. That decree, according to the pleadings as then made up, could not affect the rights of the complainants, though upon its face and according to its findings it did deny any interest to them in the estate. Nor did the administrator ask the court for any relief as against C. W. Bennett in respect to that money. Such relief might have been sought by cross-bill, but none was filed, nor did the answer set up any desire for such relief. Indeed, the whole issue submitted to the court was upon the main question, presented by the original bill and the answers, as to the rights of complainants. In view of the situation thus presented, we hold that the decree should not be reversed for this cause.

"No other objections are urged, and failing to discover any error of substance in the decree, we must affirm it."

Messrs. Brown, Wheeler & Brown, for the appellant :

The relief granted is not within the jurisdiction of a court of equity. Rev. Stat. chap. 3, sec. 70.

If a claim of the character indicated by the bill and decree existed in fact, it should have been presented to the county court. In this case there is an adequate remedy at law afforded by the statute. Rev. Stat. chap. 3, secs. 60-65; *Blanchard* v. *Williamson*, 70 Ill. 651; *Harris* v. *Douglas*, 64 id. 466.

Necessary parties were omitted. *Vansyckle* v. *Richardson*, 13 Ill. 174; *Freeland* v. *Dazey*, 25 id. 296.

The common law rule of survivorship with respect to personal property jointly owned is well understood, and not debatable. Williams on Personal Prop. 232.

Where two or more are joined together with reference to the same property, having unities of title, time, interest and possession, they are joint tenants thereof, if the property is real, and joint owners if personal. But it must be conceded that the policy of discouraging sur-

vivorship has been applied in practice more directly to lands than chattels.    Schouler on Personal Prop. 89.

Messrs. GROSS & BROADWELL, for the appellees :

The equitable powers of the county court simply pertain to the allowance of claims, and in its consideration and adjudication of claims the court is not limited by technically legal rules, but may take a somewhat broader and more liberal view, such as equitable principles might dictate. *Moore* v. *Rogers*, 19 Ill. 347; *Hurd* v. *Slaten*, 43 id. 348; *Wadsworth* v. *Cornell*, 104 id. 369; *Lill* v.*Brant*, 1 Bradw. 271, and 6 id. 366.

The doctrine is well settled, that after answer is filed, objection as to want of jurisdiction cannot be heard, unless it is in a class of cases where a court of equity could under no circumstances entertain jurisdiction. *Stout* v. *Cook*, 41 Ill. 447; *McGee* v. *McGee*, 51 id. 500; *Knox County* v. *Davis*, 63 id. 405; *Ryan* v. *Duncan*, 88 id. 144; *Seminary* v. *Gage*, 103 id. 175.

It is not the law that equity cannot take jurisdiction as to certain assets of an estate without taking the whole administration of the estate. *Cowdry* v. *Hitchcock*, 103 Ill. 262.

A party having a claim against an estate may sue for the same in any court, either equity or law, having jurisdiction of the subject matter and of the parties. *Rosenthal* v. *McGee*, 41 Ill. 370; *Wells* v. *Miller*, 45 id. 33 ; *Darling* v. *McDonald*, 101 id. 370 ; *People* v. *Allen*, 8 Bradw. 17.

If property, in its original state and form, is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust. *Renfro* v. *Pierce*, 68 Ill. 125 ; *Cookson* v. *Richardson*, 69 id. 137; Perry on Trusts, sec. 127; *Norton* v. *Hixon*, 25 Ill. 439 ; *Tyler* v. *Tyler*, 25 Ill. App. 339 ; *Halle* v. *Bank*, 140 Ill. 413 ; *Bank* v. *Goetz*, 138 id. 127; *Nat. Bank* v. *Insurance Co.* 104 U. S. 54.

Since *Mittel* v. *Karl*, 133 Ill. 65, there has been no doubt but that survivorship, as an incident of joint tenancies

in lands, has no existence in this State, except as between executors or trustees, and that as a rule of property it is contrary to the policy of Illinois.

A decree entered by consent, as against infant parties, is error. *Bennett* v. *Bradford*, 132 Ill. 269.

Mr. JUSTICE BAKER delivered the opinion of the court:

Appellant urges that his position was misunderstood by the Appellate Court, and he re-states his claim. His contention, in substance, is this: that the decree ordering the administrator of Judge Treat's estate to pay $3500 to Charles W. Bennett was rendered in a suit to which all persons in interest were parties; that said amount was decreed to be the residue of the estate theretofore jointly owned by Sarah M. and Charles W. Bennett; that the administrator paid said sum to Charles W. Bennett before the decree was reversed and before the writ of error was issued, and that therefore such payment must be regarded as a credit upon any sum found due the complainants in the original bill, notwithstanding the fact that the decree was subsequently reversed and the theory of the original bill sustained.

Special attention is called by appellant to what this court said in *Goudy* v. *Hall*, 36 Ill. 313. The language there used and here quoted by appellant is this: "Society should be able to rely upon the judgments and decrees of its courts, and although it knows that they are liable to be reversed, yet it has a right, so long as they stand, to presume they have been properly rendered." This language was used by the court in pointing out the difference, in case of a judicial sale, in the position occupied by third persons from that occupied by parties to the proceeding in which the sale was decreed. The word "society," found in the quotation, is used as synonymous with third persons, or strangers to the decree. The ground of the decision in *Goudy* v. *Hall* was, that since the circuit court had jurisdiction of the persons in interest

and subject matter, it was of no moment how erroneous the proceedings of the court may have been, the rights of third persons, acquired while such proceedings were unreversed, and by virtue of them, must be protected. (See the subsequent case of *Wadhams et al.* v. *Gay*, 73 Ill. 415, and the numerous authorities there cited.) It was there, in substance, said, that when a judgment or decree has been reversed, then, as between the parties to the litigation, they are all to be restored to their original rights, but that the rights of third persons are not affected; and also that this principle is not confined to the case of judicial sales, but that it applies to judgments and decrees which simply declare and vest the legal right in the party claiming it.

The foundation stone of the distinction between the case of parties to the suit and the case of third parties is the element of notice. The law presumes that a party to the suit or proceeding has notice of every fact and step in the proceedings of the court, from their commencement until after their completion, and he is bound to know that all the proceedings are legal. Herman on Executions, p. 488, sec. 328.

It is claimed that the $3500 paid to Charles W. Bennett should be deducted from the trust fund decreed to be paid to appellees, and that if said sum of $3500 belongs to appellees, they should be required to look to the person to whom the trustee paid it. And in that connection great reliance is placed in the case of *Kettleby* v. *Lamb*, 2 Ch. Rep. 404, which was quoted and approved of by Lord REDESDALE in *Bennett* v. *Hammill*, 2 Scho. & Lef. 566. The case was that of a bill praying that a certain sum of money in the hands of trustees might be laid out for the benefit of the plaintiff. The bill was dismissed, and the decree of dismission signed and enrolled, after which the trustee paid the money to the other party, who had claimed it. On a bill of review that decree was reversed, yet the court determined that the trustees, in regard that

they relied upon the dismission, signed and enrolled, were indemnified thereby, and that the plaintiff should be put to seek the money against the persons to whom the trustees had paid it, on the ground that the judgment, while it remained in force, bound the rights and justified the parties, though they paid it voluntarily and without suit.

There is a marked and controlling distinction between *Kettleby* v. *Lamb* and the case at bar. There the decree that was reversed was the result of a hearing before the chancellor, and was the act and voice of the chancellor, and embodied his judgment and adjudication upon the rights of the parties. Here the decree that was reversed was a decree that was entered by consent and agreement of parties, and without either a hearing before or adjudication by the court. (*Bennett* v. *Bradford*, 132 Ill. 269.) These infant appellees were incapable of consenting to the decree that deprived them of their property, and it would be highly inequitable and unjust to hold that their trustee and their father, both claiming interests that were hostile to theirs, could agree between themselves upon a decree and have it entered, whereby the trustee was relieved of all liability for $6500 of the trust fund, and the father was decreed the residue, $3500, which he was not entitled to have ; and then, the subsequent act, based on the decree so entered, of the trustee paying the $3500 to the father, has the effect of relieving the trustee of liability to account to his infant *cestuis que trust* for the sum so paid.

The conclusions we have arrived at in respect to the general merits of this case are fully and well expressed in the opinion of the Appellate Court. We approve the views therein expressed, and adopt them as our own.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*