(No. 15444.—Judgment affirmed.)

THE ILLINOIS TRUST AND SAVINGS BANK *vs.* PHILIP ARTHUR VANVLACK, Exr., Appellant.—(AGNES L. ALTON, Appellee.)

*Opinion filed October 20, 1923.*

1. BANKS—*contract for joint or several ownership in bank deposit is not invalid.* A written contract whereby two persons agree with a bank that a deposit shall be owned by them jointly or severally and that the amount of the deposit undrawn at the death of one shall be payable to and be the property of the survivor is not invalid. (*Erwin* v. *Felter*, 283 Ill. 36, explained and qualified.)

2. SAME—*when possession of bank book is not material.* Where two persons by contract with a bank have a deposit which is payable to them jointly or severally, either one is entitled to possession of the bank book; and the fact that at the death of one of them the bank book is found in an envelope marked as her property, in a safety deposit box to which each one had free access, is not a material matter.

3. JOINT TENANCY—*extent to which present statute permits a joint tenancy in personal property.* Under the act of June 30, 1919, revising the law in relation to joint rights and obligations, the right of survivorship in personal property jointly owned is reserved, where by will or other written instrument an intention is expressed to create a joint tenancy with right of survivorship; and the statute particularly includes contracts with reference to bank deposits.

THOMPSON, J., dissenting.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

GEORGE C. OTTO, for appellant.

BUSBY, WEBER, MILLER & DONOVAN, and WARNER H. ROBINSON, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This was a bill of interpleader filed in the circuit court of Cook county by the Illinois Trust and Savings Bank against Philip Arthur VanVlack, as executor of the will of Mary J. Moser, and Agnes L. Alton, to determine which of the defendants was entitled to the sum of $5855.63 on deposit with the complainant. The court decreed that the deposit belongs to Agnes L. Alton and that the complainant pay it to her. The executor appealed, the Appellate Court affirmed the decree, and a further appeal has been granted to the executor.

There is no question of fact. On November 24, 1920, Mary J. Moser, a widow, living with her sister, Agnes L. Alton, in Winnetka, deposited $2859.54 of her own money in a savings account with the Illinois Trust and Savings Bank, and both Mrs. Moser and Mrs. Alton signed an agreement as follows: "The undersigned hereby assent and agree to all the by-laws, rules and regulations of Illinois Trust and Savings Bank governing its savings accounts, with the same effect as though we had signed the signature book containing said by-laws; and we further agree that all deposits now or hereafter made to the credit of savings account No. 815,318 with said bank, or any part thereof, and any interest thereon, shall be payable to the undersigned jointly or severally and to or upon the order of

either of the undersigned, whether the other be living or not, and the receipt of the person or persons so paid shall be a valid and sufficient discharge and acquittance to said Illinois Trust and Savings Bank for any and all such payments so made. It being intended and agreed that said savings account shall be payable to and upon the joint and several orders of the undersigned or either of them, or to the survivor of them." This agreement was retained by the bank, which issued a pass-book with the following heading:

'DR. ILLINOIS TRUST & SAVINGS BANK, CHICAGO.
In account with
Mary J. Moser or Agnes L. Alton,
who make all deposits subject to the by-laws of this bank, numbers X to XIX inclusive, and XXI, which will. be found in this book and are made a part of this deposit contract."

This heading was followed by the date and the amount of the deposit. Subsequent deposits were entered in the book, added to the previous deposits, and the whole amount was shown in the proper column. Mrs. Moser made further deposits, interest was credited semi-annually, and the total amount of the deposit on July 1, 1922, was $5855.63.

Article 13 of the by-laws of the bank was as follows: "The bank shall be released and discharged by payment in any manner authorized by its by-laws. Money deposited for savings, and the interest thereon, may be withdrawn by the depositor personally or by written order if the bank have the signature of the depositor in the signature book or on a signature card, or to or upon the order of the person to whose order the deposit may be subject, or by authority of a letter of attorney, duly authenticated; but no money orders shall be payable on account of such deposits unless the depositor's bank book be produced in order that such payment may be entered therein, unless the depositor shall prove to the satisfaction of the officers of the bank that such book has been lost, stolen or destroyed, and in such

case a written discharge, with indemnity satisfactory to the bank against loss or damage for the payment made without the production of such bank book, shall be given by the depositor to the bank."

No money was drawn from this account by either Mrs. Moser or Mrs. Alton. Mrs. Moser had a checking account at the Winnetka State Bank, and on December 17, 1921, she and Mrs. Alton together went to this bank and procured a safety deposit box. Mrs. Moser told Hale, the cashier of the bank, that the box was to be made out in the names of Agnes Alton and Mary J. Moser; that its contents were for either one,—that is, whoever came to the box had the right to go in any time without the presence of the other. Thereupon the names of Mrs. Moser and Mrs. Alton were entered in the book kept for that purpose and the charge of three dollars for one year's rent was paid by Mrs. Moser. The key of the box was handed to Mrs. Moser and taken by her to the home of Mrs. Alton, where they both lived. Mrs. Alton's daughter, Jean, who has since married and is now Mrs. Coolidge, was then unmarried and living with her mother in her home. At Christmas Mrs. Moser gave to her niece, Mrs. Coolidge, a trunk, and had a conversation with her about the safety deposit box and the key to it. Mrs. Moser had a chest in the closet of her room. She showed Mrs. Coolidge where she kept the key to the chest and took the key and opened the chest, showed Mrs. Coolidge some keys in the chest and told her that one of them was the key to the trunk, and one of them, which had a tag showing what it was, was the key to the safety deposit box in the Winnetka State Bank. Mrs. Moser told Mrs. Coolidge that her mother (Mrs. Alton) had possession of this safety deposit box at any time, and that the key was for her mother as well as for Mrs. Moser to get into the box. Soon after this Mrs. Moser went south and after about six weeks' absence returned to Mrs. Alton's house, where she

lived until she went to the hospital, just before Easter.   She was in the hospital four or five weeks and died on May 23, 1922.   She made a will in May, 1920, to which she executed a codicil on May 19, 1922.   These instruments disposed of her estate, slightly in excess of $200,000, principally among her relatives, including Mrs. Alton.   The appellant, who is also her nephew, obtained the key to the safety deposit box from Mrs. Alton.   It was opened and found to contain some jewelry, silver tableware and other articles belonging to Mrs. Moser, as well as her will and the pass-book of the Illinois Trust and Savings Bank showing the account in question.   This pass-book was in an envelope sealed up, across the face of which was written in the handwriting of Mrs. Moser, "Property of Mary J. Moser."   The last deposit was made on January 17, 1922, except a credit of interest made in July, 1922.

The question for determination is whether upon the death of Mrs. Moser the deposit was the property of her estate or of Mrs. Alton.   The appellant contends that joint tenancies in personal property as well as real estate were abolished by the statute of 1821 concerning partitions and joint rights and obligations, and he refers to the case of *Hay* v. *Bennett*, 153 Ill. 271, in which it was held that the common law rule of survivorship in respect to personal property jointly owned does not prevail in this State.   In the recent case of *Erwin* v. *Felter*, 283 Ill. 36, it was said that "a joint tenancy is not confined to real estate but may exist in personal property," without mention of this decision or the statute, which were not relied upon or referred to by counsel in argument or mentioned even in the petition for rehearing.   It was not intended to overrule the decision or disregard the statute, but the statute was regarded as not applicable to the contracts involved in that case.   It was intended to hold that the right of survivorship stipulated in the certificates of deposit as an essential part of them was not unlawful, and the statement that a joint ten-

ancy may exist in personal property should not have been made without qualification or limitation. The certificates issued at the time each deposit was made evidenced the intention of the parties that Mrs. Rusk and her daughter should have a common or joint interest in the sums deposited, and a contract that either should have the right to withdraw such sums as she might choose during their joint lives, that the survivor should have the whole, and that the bank should make payments in accordance with this agreement. Whether this constituted a technical joint estate or not, it was held that the contract was not unlawful but would be enforced.

In the case of *Chippendale* v. *North Adams Savings Bank,* 222 Mass. 499, cited in *Erwin* v. *Felter, supra,* (a case of a deposit payable to either of two persons or the survivor,) the court said: "The new deposit in the Hoosac Savings Bank by its terms was a deposit to be paid during the lives of Williams and of Mrs. Worthington or either of them, as they should call for the deposit or a part of it, and the balance not withdrawn during their joint lives was to be paid to the survivor of them. Such a contract between a depositor or depositors and the savings bank is a valid contract. If Mr. Williams had gone to the savings bank with a sum of money he could have made such a contract with the savings bank. What took place was the equivalent of that, by reason of a novation with respect to the account theretofore on deposit in Williams' name alone. The case, therefore, which we have to decide is not a case of an attempted gift of property, but is a case where Williams, the depositor, through a novation had made a new contract with the savings bank, by virtue of which either he or Mrs. Worthington could draw such sums as either, in their discretion, chose during their joint lives, and the balance was to be withdrawn by and so was to belong to the survivor. In such a case there is no gift of the balance upon the death of Williams. Mrs. Worthington (when she sur-

vived Williams) became the owner of the balance undrawn by virtue of the contract of deposit, and not by virtue of a gift which took effect on Williams' death."

Besides the cases cited in *Erwin* v. *Felter, supra,* as to the right arising from contract, others to the same effect are *Wisner* v. *Wisner,* 82 W. Va. 9, and *New Jersey Title Guaranty and Trust Co.* v. *Archibald,* 91 N. J. Eq. 82. In the latter case the court said: "Whether the deposit in the case at bar created a technical joint tenancy is beside the mark. We have pointed out that it was a deposit of money originally belonging either wholly to the mother or in part to her and in part to the daughter. More strictly speaking, it was a loan by the depositors to the banks upon the terms stated, since a deposit in a bank creates the relation of debtor and creditor between the depositor and the bank. * * * It is argued that there was no gift from the donor to the donee because there was no delivery. But we think that is not so. The right was contractual and was vested in both depositors jointly, and the survivor. The contract entered into by the bank with the mother and her daughter exhibited a donative purpose from donor to donee, (not one merely for use and convenience of the donor,) and hence constituted a valid gift."

The appellant insists that Mrs. Moser retained possession of the pass-book and therefore retained control of the account, so that Mrs. Alton could never have drawn any money from it because of the provision of the by-laws that no money orders should be payable on account of the deposits unless the bank book be produced. The mere fact of the retention of the pass-book by one of the two owners of the deposit is of no importance. If the contract entered into by the two persons concerned with the bank was effectual, as was held to be the case in *Erwin* v. *Felter, supra,* each of the owners of the deposit had an equal right to possession of the book, and its possession by either did not

affect the right of the other. Both could not have actual manual possession of·it all the time. The possession of either was for the benefit of both and was not inconsistent with the contract. However, it does not appear that Mrs. Moser had the exclusive possession of the book. It was equally accessible to Mrs. Alton, and the evidence establishes the intention of Mrs. Moser that her sister should at any time have the right and be able to get the key and have access to the deposit box and the pass-book. We do not regard the evidence of possession of the pass-book as material. Under the contract shown by the writings the right of the parties in the deposit was equal, and evidence of the inconsistent words or acts of the parties is not competent.

The retention of the exclusive possession and control of the pass-book and the right to draw out all the money and thus destroy the account have been held not to be decisive of the question of intent or of the joint. ownership of the deposit and the final ownership of the survivor, and in the following cases the deposit of his money by one person in the name of himself and another with that other's knowledge, payable to either or the survivor, was held to give a' joint interest to the other person at the time of the deposit without any further delivery and regardless of the possession of the pass-book: *Kelly* v. *Beers,* 194 N. Y. 49; *Kennedy* v. *Kennedy,* 169 Cal. 287; *Blick* v. *Cockins,* 262 Pa. 56; *Negaunee Nat. Bank* v. *LeBeau,* 195 Mich. 502; *Marston* v. *Industrial Trust Co.* 107 Atl. (R. I.) 88; *McLeod* v. *Hennepin County Savings Bank,* 145 Minn. 299.

Counsel for the appellant insists that *Erwin* v. *Felter, supra,* was erroneously decided. We have re-examined that case, and while some of the language is unguarded, we are convinced that the conclusion reached is correct.

This opinion might end here, for if *Erwin* v. *Felter, supra,* was decided right, the decree of the circuit court in this case was not wrong. It seems proper, however, to refer to the change in the statute since *Erwin* v. *Felter* arose.

The certificates of deposit involved in that case were issued in 1905, when the original chapter 76 of the Revised Statutes of 1874 was in force. This chapter is concerning the law in relation to joint rights and obligations, and it was repealed by the act of June 30, 1919, which revised the law on that subject. Section 2 of the act of 1919 is as follows: "Except as to executors and trustees, and except also where by will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right or incident of survivorship as between joint tenants or owners of personal property is hereby abolished, and all such joint tenancies or ownerships shall, to all intents and purposes, be deemed tenancies in common: *Provided,* that when a deposit in any bank or trust company transacting business in this State has been made or shall hereafter be made in the names of two or more persons payable to them when the account is opened or thereafter, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all said persons at the time the account is opened or thereafter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made." This statute expressly reserves the right of survivorship in personal property jointly owned, where by will or other instrument in writing an intention is expressed to create a joint tenancy in such property with the right of survivorship, and it provides particularly for the right of survivorship when a deposit in a bank shall be made in the names of two or more persons when an agreement permitting payment to any one of such persons, whether the other is living or not, was signed by all the persons at the time the account was opened or afterward. Whatever may have been the law previous to its revision,

310—13

since the adoption of this act the right of survivorship applies to bank deposits of the character of that involved in this case.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE THOMPSON, dissenting:

In 1821 the legislature passed an act declaring that "if partition be not made between joint tenants, the parts of those who die first shall not accrue to the survivor or survivors, but descend or pass by devise, and shall be subject to debts, dower, charges, etc., or transmissible to executors or administrators, and be considered to every intent and purpose, in the same view as if such deceased joint tenants had been tenants in common." (Rev. Stat. 1845, p. 299.) This act applies to both real and personal property. (*Hay v. Bennett,* 153 Ill. 271.) It not only abolishes the common law estate of joint tenancy, but it prohibits its creation by will, deed or contract. It declares that every estate which would have been a joint tenancy under the common law must be considered to every intent and purpose the same as if it were a tenancy in common,—that is, where the estates were held by the tenants in their own right or in the right of their wives the tenancies were converted into tenancies in common. The right of survivorship, which is and always has been the principal and distinguishing incident of joint tenancies, was taken away, and upon the death of the tenant without having made partition his estate passed to his heirs or his personal representative and did not pass to the surviving tenant. (*Mette v. Feltgen,* 148 Ill. 357.) This rule was relaxed in 1827 in so far as it applied to real property, (*Svenson v. Hanson,* 289 Ill. 242,) and in 1919 the legislature again provided for joint tenancies in personal property. (Laws of 1919, p. 634.) It is now possible by an instrument in writing expressly declaring an intention to create a joint tenancy with the right of survivorship in real

or personal property to create such an estate.   Joint tenancies, however, are now, and have always been, looked upon with disfavor in this country, and the courts, regarding the right of survivorship as productive of injustice because it makes no provision for posterity, will lay hold of any indication of intent in order to construe an instrument as creating a tenancy in common and not a joint tenancy.   (*Mustain* v. *Gardner,* 203 Ill. 284; *Staples* v. *Berry,* 110 Me. 32, 85 Atl. 303; 1 Tiffany on Real Property,—2d ed.—631; 2 Schouler on Wills,—6th ed.—1450; 7 R. C. L. 813; 23 Cyc. 485.)   The offensive right of survivorship, which is the distinguishing incident of joint tenancies, is a relic of the feudal system, and the policy of the American law has always been opposed to it.   The deposit involved in *Erwin* v. *Felter, supra,* was made in 1905, and the statement made in that opinion to the effect that a joint tenancy might "exist in personal property" in Illinois prior to July 1, 1919, was not the law.

In 1917 a proviso was attached to section 1 of the Joint Rights and Obligations act, which reads: "When a deposit in any bank or trust company transacting business in this State has been made or shall hereafter be made in the names of two or more persons, payable to them, jointly or severally evidenced by a writing signed by them when the account is opened, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons, whether the other or others be living or not; when an agreement permitting such payment is signed by all said persons at the time the account is opened or thereafter and the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made."   (Laws of 1917, p. 557.)   This proviso is awkwardly drawn, and there seems to be no relation between it and the subject matter of the statute to which it is attached.   Whatever it means, it is clear that it does not purport to authorize the creation of a joint tenancy with

the incident of survivorship. It certainly was not designed to make that a gift which according to the language of the instrument signed by the depositors and other evidence was not a gift, present or future, but only a convenient way of drawing money. The section does nothing more than protect the bank. The bank, taking the receipt of the surviving depositor, is discharged from liability for what it pays out, but that does not determine the right to the fund as between the estate of the original owner and the surviving joint depositor. This construction was placed on an act almost identical in language in *Gordon* v. *Toler,* 83 N. J. Eq. 25, 89 Atl. 1020. That the legislature knew that this act did not grant the right to persons in this State to create a joint tenancy in personal property with the right of survivorship is evidenced by the fact that in 1919 it passed an act specifically granting that right.

There are four essential characteristics of a joint tenancy: unity of interest, unity of title, unity of time and unity of possession. The distinctive incident of a joint tenancy is the doctrine of survivorship. This is the natural sequence of the union and entirety of their interest, the interest of the tenants being one and the same. One has not originally a distinct moiety from the other, and if by any subsequent act the interests become separate and distinct the joint tenancy instantly ceases. The joint tenancy must be created by one and the same conveyance at one and the same time. Whether it is possible for an owner of property to split up his ownership with another and thereby create a joint tenancy is doubtful, but, granting that by a carefully worded conveyance it could be done, it certainly cannot be said that the instrument which Mary J. Moser and Agnes L. Alton signed established such a technical estate. According to the very terms of this instrument it is contemplated that either tenant may withdraw for her own use a part of the joint fund, and such an act would immediately destroy the joint tenancy. A joint tenancy implies that the interests

of the joint holders shall remain the same until death, and then that the survivor shall take all. Here either party could at any time withdraw the entire deposit, so that the joint property would be dissipated and the survivor would take nothing. Furthermore, deposits were made by Mrs. Moser .from time to time after the original deposit was made. Were these deposits transferred to the two tenants as they were made, so that a joint tenancy was created? Was the mere act of depositing a sum of money in. this account the technical conveyance in joint tenancy so jealously guarded by the law? This agreement lacks most characteristics, if not every characteristic, of a joint tenancy, and if it had been possible under the law to have created a joint tenancy in personal property at the time this joint deposit was made, none was created by this transaction.

It must be remembered in the consideration of a case of this character that the money belonged to one of the parties before it was deposited and that the money must pass somehow to the other party before it becomes his property. There being no question of a valuable consideration, the title of the survivor must rest on gift, trust or bequest. There can be no claim that the fund is bequeathed to the survivor, because the instrument is not in requisite form to constitute a valid bequest. Unless there is a transfer of title during the life of the owner the survivor gets no title. This transfer may be made directly to the donee or it may be made indirectly through a trustee. There are some cases which hold that the mere deposit of a fund in a joint account completes a transfer of the fund so that the survivor may claim the whole. These cases are based on a misconception of the real nature of the contest. To be sure, there is a contract between the bank and the depositors which protects the bank, but the real contest in this case and others like it is between the estate of the deceased, who owned the money that was deposited in the fund, and the survivor. It must be remembered that the bank is a mere stakeholder and

that property which belonged to one person is being claimed by another. It is clear in this case that there was no gift, because the owner retained control of the property. There was no unqualified delivery to the bank as trustee nor to the joint depositor as donee. The owner could have withdrawn all the fund and made a different disposition of it. The question is fully discussed and settled against the contentions of appellee in the following well-considered opinions: *Staples* v. *Berry, supra; Holman* v. *Deseret Savings Bank,* (Utah) 124 Pac. 765; *Whalen* v. *Milholland,* 89 Md. 199, 43 Atl. 45; *Flanagan* v. *Nash,* 185 Pa. St. 41, 39 Atl. 818; *Norway Savings Bank* v. *Merriam,* 88 Me. 146, 33 Atl. 840; *In re Brown's Estate,* 113 Iowa, 351, 85 N. W. 617. See Annotation L. R. A. 1917C, 550-573.

As I understand the law, the fund involved belongs to the estate of Mary J. Moser.

---

(No. 15118.—Reversed and remanded.)
THE PEOPLE *ex rel.* Guy L. Garrison *et al.* Appellees, *vs.*
T. H. KEYS *et al.* Appellants.

*Opinion filed December 19, 1923.*