# In the Matter of the Estate of Harry Crawford, Deceased.
# Helen Crawford, Appellant, v. Helen Bufe Crawford, Appellee.*

1. Gifts—*requirements of inter vivos.* To establish a gift *inter vivos* clear and convincing proof must be offered of delivery of the property by the donor to the donee with intent to pass title.

2. Gifts—*requirements for causa mortis.* To constitute a gift *causa mortis* it must be made in view of the donor's death, to take effect only in event of the donor's death of his existing disorder, and the subject thereof must be actually delivered.

3. Tenants in common and joint tenants—*deposit in bank not creating joint tenancy.* A deposit in a bank by a husband and wife in their names as "Mr. and Mrs.," but without complying with Cahill's St. ch. 76, ¶ 2, requiring a written agreement by the parties or bank to create a joint tenancy, even though there were oral statements that the wife should take all in case of the death of her husband and that was his intention, will not create a joint tenancy in such deposit and the wife will be compelled after her husband's death to turn half the remaining deposit to his estate.

Appeal by plaintiff from the Circuit Court of Madison county; the Hon. George A. Crow, Judge, presiding. Heard in this court at the October term, 1923. Reversed and remanded. Opinion filed March 10, 1924.

B. J. O'Neill, for appellant.

Ferd Tunnell, for appellee.

Mr. Justice Boggs delivered the opinion of the court.
One Harry Crawford died intestate February 28, 1923, at his home in East Alton. Said decedent had been twice married; by his first wife, Agnes Crawford, he had one child, a daughter, Helen Crawford, appellant herein. Agnes Crawford obtained a divorce from

---

* Received from clerk of Appellate Court, August 8, 1927.

said Harry Crawford on December 19, 1917, and the custody of the daughter, appellant herein, was awarded to her in said divorce proceedings. Thereafter, the said Harry Crawford was married to Helen Bufe Crawford, appellee herein, who, with appellant, the daughter, survived him as his widow and only heir at law.

Appellee was granted letters of administration on the estate of said deceased on March 20, 1923. On May 18, 1923, appellant filed a petition in the probate court, praying for an order on appellee as such administratrix to file a true and perfect inventory of the assets of said estate. The court, on the hearing, found that appellee was in possession of $1,020, which was on deposit in the bank at East Alton at the time of the death of her said husband; and, as such administratrix, she was ordered to file a supplementary inventory showing said sum of money as assets of said estate. To reverse said order, appellee prayed an appeal to the circuit court of said county. The case came on for hearing in the circuit court, and an order was entered dismissing said petition and vacating said order of the probate court. To reverse the order of the circuit court, appellant prosecutes this appeal.

The record disclosed that on December 1, 1922, Harry Crawford and appellee, his wife, went to the Illinois State Bank of East Alton and deposited $1,200, in the name of "Mr. and Mrs. Harry Crawford." On January 27, 1923, a further deposit was made of $20. On February 12, 1923, a check was drawn for $100, payable to the order of the drawer, and signed "Mrs. Harry Crawford, by cashier." This check was indorsed by Harry Crawford, and was paid through the bank. On February 22 a check was drawn for $100, payable to the order of "Cash," and signed by appellee. On March 2, being two days after the death of said deceased, appellee checked out $100, and thereafter, on March 5, she checked out the balance of $920.

At the time of the death of said deceased, there was on deposit in said bank the sum of $1,020, and it is the contention of counsel for appellant that this balance belonged to the estate of said deceased and should be inventoried as such. On the other hand, counsel for appellee insists that said balance belongs solely to appellee; that the evidence is sufficient to show a gift *inter vivos* and also a gift *causa mortis;* and further, that under section 2, chapter 76, Cahill's Revised Statutes, said deposit was a joint deposit, and as such passed to appellee as survivor.

To establish a gift *inter vivos,* it is necessary to prove the delivery of the property by the donor to the donee with an intent to pass the title, and the great weight of authority is to the effect that the proof to sustain the same must be clear and convincing. *Rothwell v. Taylor,* 202 Ill. 226–230, and cases there cited. The evidence in this record fails to show a gift *inter vivos* as to the entire deposit, for the reason that said deceased, as well as appellee, evidently had full authority to check on said account.

There are three requisites to constitute a gift *causa mortis:* First, the gift must be made with a view of the donor's death; second, it must be made to take effect only in the event of the donor's death of his existing disorder; third, there must be an actual delivery of the subject of the donation. *Telford v. Patton,* 144 Ill. 611–619; Story's Eq. Juris. 607a; *Barnes v. People,* 25 Ill. App. 136; *Roberts v. Draper,* 18 Ill. App. 167; *Ridden v. Thrall,* 125 N. Y. 572. There is some oral testimony in the record which in a way tends to show that deceased, in making said deposit, had in mind fixing it so that appellee could draw the money should anything happen to him. This, however, under the authorities above cited, would not establish a gift *causa mortis.*

It has been frequently held that the deposit of money by one person, in the name of himself and another,

with that other's knowledge, payable to either, or to the survivor, creates a joint interest in said fund in said parties. *Kelly v. Beers,* 194 N. Y. 49; *Kennedy v. McMurray,* 169 Cal. 287; *Blick v. Cockins,* 252 Pa. 56; *Negaunee Nat. Bank v. Le Beau,* 195 Mich. 502; *Marston v. Industrial Trust Co.* (R. I.), 107 Atl. 88; *McLeod v. Hennepin County Sav. Bank,* 145 Minn. 299; *Illinois Trust & Savings Bank v. VanVlack,* 310 Ill. 185–192. We are of the opinion that the deposit in question to the credit of "Mr. and Mrs. Harry Crawford" would, without any further proof, create a joint interest in said funds in said parties, with the right of survivorship, but for the provisions of the statute relating to joint rights and obligations. Section 2 of said statute is as follows:

"Except as to executors and trustees, and except also where by will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right or incident of survivorship as between joint tenants or owners of personal property is hereby abolished, and all such joint tenancies or ownerships shall, to all intents and purposes, be deemed tenancies in common; provided, that when a deposit in any bank or trust company transacting business in this State has been made or shall hereafter be made in the names of two or more persons payable to them when the account is opened or thereafter, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all said persons at the time the account is opened or thereafter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made." Cahill's St. ch. 76, ¶ 2.

This section expressly abolishes joint tenancies in personal property, except where the same are evi-

denced by writing. The entry of the deposit in question on the books of the bank does not by its terms provide that the survivor of said depositors should have the right to withdraw said funds. While, except for the provisions of the statute above referred to, a deposit of the character we have here would pass to the survivor upon the death of one of said parties, it is for the reason that at common law a joint tenancy in personal property carried with it the right of survivorship.

Counsel for appellee strongly relies on the case of *Erwin v. Felter,* 283 Ill. 36, as sustaining appellee's claim to the ownership of the fund in question. In that case the court, at page 39, stated that "joint tenancy is not confined to real estate, but may exist in personal property," citing *Attorney General v. Clark,* 222 Mass. 291.

In the later case of *Illinois Trust & Savings Bank v. VanVlack, supra,* the court, in discussing a question of this character, held the language above quoted had been inadvertently used, and says at page 189: "The appellant contends that joint tenancies in personal property as well as real estate were abolished by the statute of 1821 concerning partitions and joint rights and obligations, and he refers to the case of *Hay v. Bennett,* 153 Ill. 271, in which it was held that the common-law rule of survivorship in respect to personal property jointly owned does not prevail in this State. In the recent case of *Erwin v. Felter,* 283 Ill. 36, it was said that 'a joint tenancy is not confined to real estate but may exist in personal property,' without mention of this decision or the statute, which were not relied upon or referred to by counsel in argument or mentioned even in the petition for rehearing. It was not intended to overrule the decision or disregard the statute, but the statute was regarded as not applicable to the contracts involved in that case. It

was intended to hold that the right of survivorship stipulated in the certificates of deposit as an essential part of them was not unlawful, and the statement that a joint tenancy may exist in personal property should not have been made without qualification or limitation.''

The effect of the decision in *Erwin v. Felter, supra,* was to hold that the written instrument evidencing the deposit in the bank gave to Mrs. Rusk and her daughter or either of them the right to withdraw the whole or any part of said funds during their joint lives, and the right to the survivor to withdraw any balance that might remain of said deposit, and the certificates of deposit issued by the bank obligated the bank to pay to either of said parties, during the life of both, the whole or any part of said fund, and on the death of Mrs. Rusk, to pay to her daughter, Mrs. Edwards, the funds represented by said certificates of deposit. In other words, it was held to be a contractual relation between the bank and said parties, and the court enforced it. In the later case of *Illinois Trust & Savings Bank v. VanVlack, supra,* the court, while holding that some of the language used in *Erwin v. Felter* was inadvertently used, held that the decision on the contractual relation above referred to was right.

In the case of *Illinois Trust & Savings Bank v. VanVlack, supra,* the written evidence abundantly sustained the finding of the court, that a right of survivorship was created in the deposit there in question, the written evidence in the case coming directly within the provisions of the statute above quoted.

The deposit here in question is an ordinary deposit to the credit of appellee and her husband. There is no written evidence, executed either by the parties making the deposit or by the bank or its officers, or otherwise, indicating an intention on the part of said parties that the survivor should have the right and authority

to withdraw any balance that might remain of said fund in said bank at the time of the death of the other.

This being the state of the record, we hold that, under the statute above referred to, said balance of $1,020 in the bank at the time of the death of said deceased would pass, one-half to his estate, and one-half to appellee, and that appellee, as such administratrix, should charge herself with one-half of said fund, as a part of the assets of the estate of said deceased. This holding is in keeping with the policy of our law, as joint tenancies have always been looked upon with disfavor in this country. *Mustain v. Gardner,* 203 Ill. 284; 7 R. C. L. 813; 23 Cyc. 485.

For the reasons above set forth, the judgment of the trial court will be reversed and the cause will be remanded for further proceedings in harmony with this opinion.

*Judgment reversed and cause remanded.*